

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA

D. S.,                                    )
                                          )
      Plaintiff,              )
                                          )          **Case No. 2:20-CV-02012-RDP**
v.                                        )
                                          )
**JEFFERSON DUNN,** *et al.*,             )
                                          )
      Defendants.             )

## MEMORANDUM OF LAW IN SUPPORT OF THE STATE'S
## <u>MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION TO STRIKE</u>

# TABLE OF CONTENTS

Table of Contents ............................................................................................................. i

Table of Authorities ....................................................................................................... iii

Introduction .....................................................................................................................1

Plaintiff's Allegations .....................................................................................................2

Legal Standard ................................................................................................................4

Argument .........................................................................................................................5

      I.     The Court Should Strike Plaintiff's Complaint as an Impermissible "Shotgun Pleading" ..........................................................................................................5

      II.    Plaintiff's Complaint Represents an Impermissible Attempt to Avoid Sovereign Immunity ...............................................................................................................6

      III.   Plaintiff's Complaint Fails to Allege a Constitutional Violation by Any ADOC Official ......................................................................................................8

            A.     A The Complaint Fails to Allege the Personal Involvement of Any ADOC Official in Any Constitutional Violation .........................................9

            B.     Plaintiff Fails to Allege a Section 1983 Retaliation Claim ........................14

      IV.   The Doctrine of Qualified Immunity Bars Plaintiff's Claims Against the ADOC Officials in Their Individual Capacities ....................................................15

      V.    Palintiff's State-Law Claims are Due to be Dismissed ..........................................18

            A.     The ADOC Officials are Entitled to State-Agent Immunity from Plaintiff's State-Law Claims ....................................................................18

            B.     Plaintiff Fails to State a Claim for Intentional Infliction of Emotional Distress and Negligence ..........................................................................21

                 1.     Plaintiff Fails to State a Claim for Intentional Infliction of Emotional Distress under Alabama Law .......................................21

                 2.     Plaintiff Fails to State a Claim for Negligence under Alabama Law .................................................................................................21

Conclusion .....................................................................................................................22

Certificate of Service ...................................................................................................................24

# TABLE OF AUTHORITIES

**Cases**

*Alexander v. Univ. of N. Fla.*,
  39 F.3d 290 (11th Cir. 1994) ..................................................................... 16

*Anderson v. Creighton*,
  483 U.S. 635 (1987) ................................................................................... 16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................... passim

*Belcher v. City of Foley*,
  30 F.3d 1390 (11th Cir. 1994) ................................................................... 12

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ..................................................................................... 4

*Carpenter v. Tillman*,
  948 So. 2d 536 (Ala. 2006) ........................................................................ 19

*Clark v. City of Atlanta, Ga.*,
  544 F. App'x 848 (11th Cir. 2013) ............................................................... 9

*Cook v. Corizon, LLC*,
  No. 2:17-CV-178-SMD, 2019 WL 2076392 (M.D. Ala. May 10, 2019)............... 9, 10

*Cottone v. Jenne*,
  326 F.3d 1352 (11th Cir. 2003) ........................................................... 12, 18

*Daniels v. Felton*,
  823 F. App'x 787 (11th Cir. Aug. 11, 2020) .............................................. 12

*Davis v. Coca-Cola Bottling Co. Consol.*,
  516 F.3d 955 (11th Cir. 2008) ..................................................................... 5

*Dickinson v. Cochran*,
  833 F. App'x 268 (11th Cir. 2020) ............................................................ 13

*Drew v. Quest Diagnostics*,
  992 F.Supp.2d 1177 (N.D. Ala. 2014) ........................................................ 21

*Ex parte Butts*,
  775 So. 2d 173 (Ala. 2000) ........................................................................ 19

*Ex parte Estate of Reynolds*,
  946 So. 2d 450 (Ala. 2006) ........................................................................ 19

*Ex parte Gilland,*
    274 So. 3d 976 (Ala. 2018)...................................................................... 20

*Ex parte Hugine,*
    256 So. 3d 30 (Ala. 2017)........................................................................ 20

*Ex parte Moulton*,
    116 So. 3d 1119 (Ala. 2013)................................................................ 7, 20

*Ezell v. Dunn, et al.*,
    Case No.: 4:20-cv-02058-ACA ............................................................. 5, 6

*Franklin v. Curry*,
    738 F.3d 1246 (11th Cir. 2013) ................................................................. 4

*Gaines v. Wardynski*,
    871 F.3d 1203 (11th Cir. 2017) ............................................................... 17

*Giambrone v. Douglas*,
    874 So. 2d 1046 (Ala. 2003)................................................................... 22

*Hale v. Tallapoosa Cty.*,
    50 F.3d 1579 (11th Cir. 1995) ................................................................... 9

*Halmos v. Bombardier Aerospace Corp.,*
    404 F. App'x 376 (11th Cir. 2010) .......................................................... 14

*Harrison v. Culliver*,
    746 F.3d 1288 (11th Cir. 2014) ........................................... 11, 12, 17, 18

*Hartley v. Parnell*,
    193 F.3d 1263 (11th Cir. 1999) ............................................................... 12

*Holloman ex rel. Holloman v. Harland*,
    370 F.3d 1252 (11th Cir. 2004) ............................................................... 17

*Irish v. Fowler*,
    979 F.3d 65 (1st Cir. 2020)........................................................................ 3

*Kentucky v. Graham*,
    473 U.S. 159 (1985) ................................................................................... 7

*Lee v. Ferraro*,
    284 F.3d 1188 (11th Cir. 2002) ............................................................... 16

*Lemley v. Wilson*,
    178 So.3d 834 (Ala. 2015)....................................................................... 21

*Marbury v. Warden,*

　　936 F.3d 1227 (11th Cir. 2019) ............................................................. 8, 12, 13, 18

*Mitchell v. Forsyth,*
　　472 U.S. 511 (1985) ........................................................................................ 15

*Owens v. Sec'y, Fla. Dep't of Corr.,*
　　812 F. App'x 861 (11th Cir. 2020) ................................................................. 12

*Pearson v. Callahan,*
　　555 U.S. 223 (2009) ........................................................................................ 16

*Pilcher v. Dunn, et al.,*
　　Case No. 4:21-cv-00204-ACA ...................................................................... 5, 6

*Shook v. Dunn,*
　　Civil Action No. 2:18-cv-1048-MHT, 2020 WL 1492841 (M.D. Ala. Mar. 25, 2020) ............ 20

*Smith v. Mosley,*
　　532 F.3d 1270 (11th Cir. 2008) ...................................................................... 15

*Stallworth v. Wilkins,*
　　802 F. App'x 435 (11th Cir. 2020) ................................................................. 12

*Swain v. Junior,*
　　961 F.3d 1276 (11th Cir. 2020) .................................................................. 8, 14

*U.S. v. Alabama, et al.,*
　　2:20-CV-01971-RDP ....................................................................................... 14

*Vaughan v. Sibley,*
　　709 So. 2d 482 (Ala. Civ. App. 1997) ............................................................. 7

*Vaughn v. Cty of Athens,*
　　176 Fed. App'x 974 n. 1 .................................................................................... 3

*Weiland v. Palm Beach Cty. Sheriff's Office,*
　　792 F.3d 1313 (11th Cir. 2015) ........................................................................ 5

*Woods v. Comm'r., Ala. Dept. of Corr.,*
　　951 F.3d 1288 (11th Cir. 2020) ...................................................................... 18

**Statutes**

28 U.S.C. § 1367 ..................................................................................................... 18

42 U.S.C. § 1983 ................................................................................................. 3, 4

Ala. Code § 41-9-62 (1975) .................................................................................. 7

Defendants JEFFERSON S. DUNN ("Commissioner Dunn"), GRANTT CULLIVER ("Culliver"), JEFFERY WILLIAMS ("Williams"), EDWARD ELLINGTON ("Ellington"), and CHRISTY VINCENT ("Vincent," and, collectively with Commissioner Dunn, Culliver, Williams, and Ellington, the "Administrative Officials"); GWENDOLYN GIVENS ("Givens"), ANTHONY BROOKS ("Brooks"), and KARLA JONES ("Jones," and, collectively with Givens and Brooks, the "St. Clair Officials"); and JEFFERY BALDWIN ("Baldwin," and collectively with the Administrative Officials and St. Clair Officials, the "ADOC Officials") submit this Memorandum of Law in Support of the ADOC Officials' Motion to Dismiss ("Motion to Dismiss") the Complaint filed by Plaintiff D. S. ("Plaintiff") under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## INTRODUCTION

Plaintiff seeks to hold individual ADOC Officials personally liable for injuries he claims he suffered at the hands of other inmates. Plaintiff names a total of twenty-nine (29) individuals (eight (8) of whom file this Motion). Instead of specifying which individual performed which actions, Plaintiff lumps all of these individuals together, vaguely alleging that all of them (or groups of them) violated Plaintiff's constitutional rights. Plaintiff's Complaint fails basic pleading standards, and the Court should strike it as an impermissible shotgun pleading and require Plaintiff to file an amended pleading setting forth specific factual allegations against each individual. In the alternative, the Court should dismiss the Complaint for at least the following five (5) reasons:

(1)     Alabama law provides Plaintiff with an adequate damages remedy before the Alabama Board of Adjustment, and he therefore cannot avoid Eleventh Amendment and state sovereign immunity by suing the ADOC Officials individually;

(2)     Plaintiff fails to allege a plausible section 1983 claim against any ADOC Official;

(3)      Qualified immunity protects the ADOC Officials from Plaintiff's section 1983 claims;

(4)      State-agent immunity bars Plaintiff's state-law claims; and

(5)      Plaintiff fails to plead a state-law claim against any ADOC Official.

For these reasons, the Complaint and all claims asserted against the ADOC Officials are due to be dismissed pursuant to Rules 12(b)(1) and/or 12(b)(6) of the Federal Rules of Civil Procedure.

## PLAINTIFF'S ALLEGATIONS

Plaintiff, a convicted felon in the custody of the Alabama Department of Corrections ("ADOC") since November 18, 2018, and currently housed at Limestone Correctional Center, brings this action seeking to hold almost thirty (30) current and former ADOC officials personally liable for injuries he suffered at the hands of other inmates. (Doc. 1, ¶ 1). Plaintiff alleges that in February 2018, other inmates at Holman Correctional Facility ("Holman") attacked him. (Doc. 1, ¶ 2, 51). Following the attack, Plaintiff alleges that ADOC transferred him to Donaldson Correctional Facility ("Donaldson") and placed him in restrictive housing. (Doc. 1, ¶ 52, 53). Plaintiff alleges he "informed various individuals" that some enemies from the attack at Holman were also housed at Donaldson. (Doc. 1, ¶ 54). Plaintiff alleges generally that a group of individuals he defines as the "Donaldson Defendants" moved him into a general population dormitory despite the presence of his enemies. (Doc. 1, ¶ 57). Plaintiff does not allege that any of the ADOC Officials had any direct involvement in this housing decision. Plaintiff alleges that, on or about December 15, 2018, other inmates at Donaldson attacked him. (Doc. 1, ¶ 59).

Following the alleged assault at Donaldson, Plaintiff alleges ADOC transferred him to St. Clair Correctional Facility ("St. Clair") and initially placed him in restrictive housing. (Doc. 1, ¶ 72, 73). Plaintiff alleges that he spoke with various "Defendants during their rounds . . . or sent

written correspondence . . . that he had enemies in population." (Doc. 1, ¶ 74). Plaintiff alleges that the "St. Clair Defendants" moved Plaintiff to a general population dormitory. (Doc. 1, ¶ 78). Again, Plaintiff fails to allege that any of the ADOC Officials participated directly in this housing decision. Plaintiff alleges that other inmates at St. Clair attacked him on or about January 29, 2019. (Doc. 1, ¶ 91, 93).

Plaintiff alleges that once he was able to escape he went first to the shift office and then to the infirmary. (Doc. 1, ¶¶ 96-97, 99). Plaintiff further alleges that he visited a clinic for sexual assault examination and spoke with an investigator regarding the alleged assault. (Doc. 1, ¶¶ 106, 107). Plaintiff alleges that the assaults at Donaldson and St. Clair caused Plaintiff to suffer "lasting and serious emotional and physical injuries." (Doc. 1, ¶¶ 60, 109).

The Complaint purports to assert the following eight (8) counts:

**Count I:**   Against the ADOC Officials[1] pursuant to 42 U.S.C. § 1983 Eighth Amendment Failure to Protect;

**Count II:**   Against the ADOC Officials pursuant to 42 U.S.C. § 1983 Eighth and Fourteenth Amendment State-Created Danger;[2]

**Count III:**   Against the Administrative Officials and the St. Clair Officials pursuant to 42 U.S.C. § 1983 First, Eighth, and Fourteenth Amendment Unlawful Retaliation;

**Count IV:**   Against Baldwin pursuant to 42 U.S.C. § 1983 Civil Conspiracy;

**Count V:**   Against the Administrative Officials and the St. Clair

---

[1] Plaintiff uses the defined term "Donaldson Defendants" in his Complaint, which includes Baldwin, as well as four (4) other individuals. (Doc. 1, ¶ 21). Plaintiff also uses the defined term "St. Clair Defendants," which includes Commissioner Dunn, Culliver, Williams, Ellington, Vincent, Jones, Givens, and Brooks, as well as seven (7) other individuals. (Doc. 1, ¶¶ 22, 23, 31). Plaintiff defines Commissioner Dunn, Culliver, Williams, Ellington, and Vincent as the "St. Clair Defendant ADOC Supervisors" and defines the remaining "St. Clair Defendants" as the "St. Clair Defendant Facility Supervisors." (Doc. 1, ¶ 23, 31).

[2] Plaintiff's claim for State-created danger is not recognized in the Eleventh Circuit. See Vaughn v. Cty of Athens, 176 Fed. App'x 974, 976, n. 1 ("But this Court has written that the 'special relationship' and 'state created danger' doctrines are no longer valid." (internal citations omitted)). See also Irish v. Fowler, 979 F.3d 65, 73 (1st Cir. 2020) (Noting that nine other circuits—the Second, Third, Fourth, Sixth, Seventh, Eighth, Ninth, Tenth, and the D.C. Circuits— recognize the doctrine of state-created danger.)

Officials pursuant to 42 U.S.C. § 1983 Civil Conspiracy;

**Count VI:** Against the the ADOC Officials pursuant to 42 U.S.C. § 1983 Failure to Intervene;

**Count VII:** Against the ADOC Officials pursuant to Alabama State Law Intentional Infliction of Emotional Distress; and

**Count VIII:** Against the ADOC Officials pursuant to Alabama State Law Negligence.

For the reasons articulated below, Plaintiff's Complaint fails to satisfy the basic pleading rules and fails to provide the ADOC Officials notice of the claim(s) asserted against each individually.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557).

In addressing a pleading such as the Complaint in this action, when a plaintiff relies upon vague, conclusory allegations, a court must "first separat[e] out the complaint's conclusory legal allegations and then determin[e] whether the remaining well-pleaded factual allegations, accepted as true, 'plausibly give rise to an entitlement to relief.'" Franklin v. Curry, 738 F.3d 1246, 1251 (11th Cir. 2013) (quoting Iqbal, 556 U.S. at 679). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. Stripped of its

labels, conclusions, and formulaic recitation of elements from the statute, Plaintiff's Complaint

lacks well-pleaded factual allegations. Id. At a minimum, Plaintiff's failure to follow these most

basic pleading rules warrants a directive to adequately plead any claims.

## ARGUMENT

I. **THE COURT SHOULD STRIKE PLAINTIFF'S COMPLAINT AS AN IMPERMISSIBLE "SHOTGUN PLEADING."**

Plaintiff's Complaint constitutes a perfect example of a "shotgun pleading." "Shotgun

pleadings" are cumbersome, confusing complaints that do not comply with pleading requirements.

See Weiland v. Palm Beach Cty. Sheriff's Office, 792 F.3d 1313, 1321-23 nn.11-15 (11th Cir.

2015).[3] "The unifying characteristic of all types of shotgun pleadings is that they fail to . . . give

the defendants adequate notice of the claims against them and the grounds upon which each claim

rests." Id. at 1323. The Eleventh Circuit "roundly, repeatedly, and consistently condemn[s]"

shotgun pleadings. Davis v. Coca-Cola Bottling Co. Consol., 516 F.3d 955, 979 (11th Cir. 2008).

This Court should strike Plaintiff's Complaint as a shotgun pleading.

This Court recently struck two (2) complaints as shotgun pleadings. Ezell v. Dunn, et al.,

Case No.: 4:20-cv-02058-ACA, involved allegations strikingly similar to those here by the same

Plaintiff's counsel. The Ezell "complaint contains 200 paragraphs of factual allegations, and each

one incorporates by reference every preceding paragraph." (Ezell, Doc. 30, p. 3, attached hereto

as Exhibit A) . Accordingly, it was "'exceedingly difficult, if not impossible, to know which

allegations pertain to [which] count.'" (Id. (quoting Keith v. DeKalb Cnty., Ga., 749 F.3d 1034,

1045 n.39); see also Pilcher v. Dunn, et al., Case No. 4:21-cv-00204-ACA, Doc. 14,

---

[3] The Eleventh Circuit identified four (4) basic types of shotgun pleadings: (1) those in which "each count adopts the allegations of all preceding counts;" (2) those that do not re-allege all preceding counts but are "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action;" (3) those that do not separate each cause of action or claim for relief into a different count; and (4) those that assert multiple claims against multiple defendants without specifying which applies to which. Weiland, 792 F.3d at 1321-23. Plaintiff's Complaint falls into types (1), (2), and (4). (See Doc. 1).

p. 3 (same)) (attached hereto as Exhibit B). Here, the Complaint contains 290 paragraphs of factual allegations, and each of the eight (8) counts "incorporates each paragraph of this Complaint as if fully restated here." (Doc. 1, ¶¶ 291, 297, 305, 311, 316, 321, 325, 330). Moreover, just as in Ezell and Pilcher, each count of the Complaint "assert[s] multiple claims against [multiple] defendants without specifying which of the defendants are responsible for which acts or omissions giving rise to that claim." (Ezell, Doc. 30 (Ex. A), p. 4; Pilcher, Doc. 14 (Ex. B), p. 3) (quoting Weiland, 792 F.3d at 1323).

Rather than including specific allegations against each ADOC Official, Plaintiff includes broad allegations against various "categories" of officials, including "Donaldson Defendants," "St. Clair Defendants," "St. Clair Defendant ADOC Supervisors," and "St. Clair Defendant Facility Supervisors." (Doc. 1, ¶¶ 30, 42, 57, 58, 61, 62, 66, 68, 71, 76, 78, 87, 88, 101, 105, 110, 162, 164, 168, 169, 172, 173, 175, 176, 183, 186, 191, 192, 207, 208, 209, 210, 211, 215, 227, 230-31, 240, 248-49, 251, 253, 254-58, 261, 263, 269, 270-75, 277-78, 283, 286, 289). These non-specific allegations cannot put any individual ADOC Official on notice of the specific claims against him or her – despite the fact that Plaintiff seeks money damages from each ADOC Official individually. See Iqbal, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Plaintiff's Complaint represents precisely the type of shotgun pleading criticized by the Eleventh Circuit. The Court should strike it and require Plaintiff to file an amended complaint including "a separate count for each claim against one defendant, and the factual basis for that claim only." (Ezell, Doc. 30 (Ex. A), p. 4; Pilcher, Doc. 14 (Ex. B), p. 4) .

## II. PLAINTIFF'S COMPLAINT REPRESENTS AN IMPERMISSIBLE ATTEMPT TO AVOID SOVEREIGN IMMUNITY.

Eleventh Amendment immunity bars damages claims against ADOC directly or against its

officials in their official capacities.  <u>Kentucky v. Graham</u>, 473 U.S. 159, 169 (1985).  Alabama law also bars state-law damages claims directly against state agencies such as ADOC and against state officials in their official capacities.  <u>Ex parte Moulton</u>, 116 So. 3d 1119, 1140 (Ala. 2013).  In apparent recognition of this black-letter law, Plaintiff purports to assert only individual-capacity claims against individual defendants.  Plaintiff's pleading represents an attempted end-run around Eleventh Amendment and state sovereign immunity.  Because Plaintiff cannot recover damages against ADOC or its officials in their official capacities, he attempts to recover damages from them individually.  However, Alabama law already contains a mechanism to deal with damages claims that sovereign immunity would otherwise bar.  Thus, sovereign immunity does not mean that Alabama or its officials avoid liability for valid, legal obligations.  Ala. Code § 41-9-62 (1975).  The Alabama Board of Adjustment possesses "'jurisdiction over claims against the state that are not justiciable in the courts because of the state's constitutional immunity from being made a defendant.'"  <u>Vaughan v. Sibley</u>, 709 So. 2d 482, 486 (Ala. Civ. App. 1997) (quoting <u>Lee v. Cunningham</u>, 176 So. 477, 479 (Ala. 1937)).  The Board of Adjustment specifically holds jurisdiction over "[a]ll claims for damages to the person or property growing out of any injury done to either the person or property by the State of Alabama or any of its agencies, commissions, boards, institutions or departments" and "[a]ll claims for personal injuries to or the death of any convict." Ala. Code. § 41-9-62(a)(1), (2) .  Thus, to the extent Plaintiff seeks damages for injuries sustained while in ADOC's custody, the Alabama Board of Adjustment exists to adjudicate those very claims.  It is therefore unnecessary to permit Plaintiff to pursue a federal-court action against individual officers whom he alleges acted within the scope of their employment.   (Doc. 1, ¶ 13).

**III.    PLAINTIFF'S COMPLAINT FAILS TO ALLEGE A CONSTITUTIONAL VIOLATION BY ANY ADOC OFFICIAL.**

"A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment if [the official] is deliberately indifferent to a substantial risk of serious harm to an inmate who suffers injury." Marbury v. Warden, 936 F.3d 1227, 1233 (11th Cir. 2019). "To establish a deliberate-indifference claim, a plaintiff must make both an objective and a subjective showing." Swain v. Junior, 961 F.3d 1276, 1285 (11th Cir. 2020) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1944)).  The first element, whether there was a substantial risk of harm, is assessed objectively and requires the plaintiff to show "conditions that were extreme and posed an unreasonable risk of serious injury to his future health or safety." Marbury v. Warden, 936 F.3d at 1233  (quoting Lane v. Philbin, 835 F.3d 1302, 1307 (11th Cir. 2019) (internal citations omitted)).  The second component, the subjective showing, requires a plaintiff to establish a defendant's deliberate indifference to the risk of serious harm by "making three sub-showings: '(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence.'" Swain, 961 F.3d at 1285 (quoting Lane, 835 F.3d at 1308).

Deliberate indifference sets a high bar. Id.  In establishing the subjective showing, "[a] plaintiff must prove that the defendant acted with a 'sufficiently culpable state of mind.'"  Id. (quoting Farmer, 511 U.S. at 834).  This culpable state of mind exceeds malpractice or ordinary negligence and "is in fact akin to 'subjective recklessness as used in the criminal law.'" Swain, 961 F.3d at 1288  (quoting Farmer, 511 U.S. at 839-40).  "Finally, the plaintiff must show a 'necessary causal link' between the officer's failure to act reasonably and the plaintiff's injury." Marbury, 936 F.3d at 1233  (quoting Rodriguez v. Sec'y for Dep't of Corrs., 508 F.3d 611, 622-23 (11th Cir. 2007)).

Plaintiff seeks to hold the ADOC Officials individually liable for the criminal activities of

other inmates. In essence, Plaintiff argues that the ADOC Officials should have prevented the harm he allegedly suffered at the hands of these inmates. Seeking to establish deliberate indifference against the ADOC Officials, Plaintiff puts forth four (4) theories: (1) failure of the ADOC Officials to protect Plaintiff at Donaldson and at St. Clair (Doc. 1, Count I, ¶¶ 291-296); placement of Plaintiff in a known State-created danger of a substantial risk of harm at Donaldson and St. Clair (Doc. 1, Count II, ¶¶ 297-304); (3) unlawful retaliation against Plaintiff for reporting his sexual assault at St. Clair (Doc. 1, Count III, ¶¶ 305-310); and failure to intervene to prevent violence against the Plaintiff at Donaldson and St. Clair (Doc. 1, Count VI, ¶¶ 321-324).[4] The Complaint fails to include factual allegations that support any of these claims.

### A. THE COMPLAINT FAILS TO ALLEGE THE PERSONAL INVOLVEMENT OF ANY ADOC OFFICIAL IN ANY CONSTITUTIONAL VIOLATION.

Plaintiff seeks monetary damages from the ADOC Officials in their individual, or personal, capacities. (Doc. 1, ¶ 13). To plausibly allege such a claim, Plaintiff must at a minimum allege personal involvement by each ADOC Official in a violation of his rights. "Personal involvement by an individual-capacity defendant is an indispensable element of a valid legal claim," and "only exists when the individually named defendant performed the acts or omissions at issue himself or directed a subordinate to do so." Cook v. Corizon, LLC, No. 2:17-CV-178-SMD, 2019 WL 2076392, *3 (M.D. Ala. May 10, 2019); see Hale v. Tallapoosa Cty., 50 F.3d 1579 (11th Cir. 1995); Clark v. City of Atlanta, Ga., 544 F. App'x 848, 857 (11th Cir. 2013); see also Galer v. Massanari, 277 F.3d 1372 (5th Cir. 2001); Guerrero-Aguilar v. Ruano, 118 F. App'x 832 (5th Cir. 2004). Thus, to state a claim against the ADOC Officials personally, Plaintiff must plead that "each [ADOC Official], *through the official's own individual actions* . . . violated the constitution."

---

[4] These claims include Counts I, II, III, and VI, respectively. Plaintiff also raises claims against the ADOC Officials for federal conspiracy (Counts VI and V), state-law intentional infliction of emotional distress (Count VII), and negligence (Count VIII).

<u>Cook</u>, 2019 WL 2076392, *3; (emphasis added); <u>see also</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 676-77 (2009) . Plaintiff's individual-capacity claims against all of the ADOC Officials fail to meet this minimal standard.

**Jeffery Baldwin.** According to Plaintiff, Baldwin was a correctional captain at Donaldson at the time of Plaintiff's assault in December 2018. (Doc. 1, ¶¶ 16, 18). Plaintiff alleges that Baldwin was "on notice" that Plaintiff was vulnerable, had enemies at Donaldson, and was aware that "the commingling of known enemies in housing units results in foreseeable violence." (Doc. 1, ¶¶ 56).[5] Plaintiff then alleges the "Donaldson Defendants including Defendant Bonner moved D.S. into general population housing at Donaldson with his enemies and the Donaldson Defendants took no action to separate, or protect, him from his enemies." (Doc. 1, ¶ 57). Even taking Plaintiff's claims as true, Plaintiff fails to state a claim against Baldwin. Plaintiff does not allege that Baldwin participated in the decision to move Plaintiff to general population, nor does he allege what Baldwin should have done, but did not do, to protect Plaintiff from his enemies. Accordingly, Plaintiff's individual-capacity claims against Baldwin are due to be dismissed.

**St. Clair Officials.** Plaintiff's allegations against the St. Clair Officials (Jones, Givens, and Brooks) similarly fail to adequately allege personal involvement. Plaintiff alleges that Jones "was the Warden at St. Clair," and that Givens and Brooks were "Assistant Warden[s] at St. Clair leading up to and during the events described in Plaintiff's Complaint." (Doc. 1, ¶¶ 32-34). As with the Donaldson Officials, Plaintiff alleges only that they "were on notice that D.S. had enemies at St. Clair" and "was particularly vulnerable." (Doc. 1, ¶¶ 74, 76, 77). Plaintiff appears to allege constitutional violations stemming from (1) the decision to release him from segregation into general population and (2) an alleged failure to separate him from his enemies. (Doc. 1, ¶¶ 78-

---

[5] Plaintiff defines the "Donaldson Defendants" as "[c]ollectively, … [Sgt.] Pickens, [Shannon] Caldwell, Baldwin, Street (sic), Garland, and [Lisa] Bonner." (Doc. 1, ¶ 21).

86).   However, Plaintiff does not allege that any of the St. Clair Officials participated in the decisions concerning his housing assignment.  Plaintiff's Complaint falls far short of alleging that any of the St Clair Officials acted, failed to act, or instructed a subordinate to act (or not), in a way that violated the Constitution, and all claims against them in their individual capacities are due to be dismissed.

**Administrative Officials.**   Plaintiff categorizes the Administrative Officials (Dunn, Culliver, Williams, Ellington, and Vincent) as the "St. Clair Defendant ADOC Supervisors," a subset of Plaintiff's group of "St. Clair Defendants."  (Doc. 1, ¶¶ 22, 23).  Plaintiff alleges that Culliver "was placed on administrative leave in September 2018 and permitted to retire in December 2018" – i.e., before the alleged January 2019 attack on Plaintiff at St. Clair.  (Doc. 1, ¶ 25).  Thus, Plaintiff cannot plausibly allege Culliver's personal involvement in any violation of his constitutional rights.  Plaintiff alleges that the Administrative Officials "acted in a supervisory capacity over other St. Clair employees," and "the constitutional injuries complained of herein were proximately caused by a pattern and practice of misconduct at St. Clair, which occurred with the consent of the [Administrative Officials], who personally knew about, facilitated, approved, and/or condoned this pattern and practice of misconduct, or at least recklessly caused the alleged deprivation by their actions or by their deliberate indifference and failure to act."  (Doc. 1, ¶ 30).  In other words, Plaintiff alleges only that the ADOC Officials knew of a generalized risk of harm at St. Clair.  (Doc. 1, ¶ 110).  Even if true, this general allegation cannot support individual-capacity claims against the ADOC Officials.

"'It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability.'"  Harrison v. Culliver, 746 F.3d 1288, 1299 (11th Cir. 2014) (quoting Cottone v. Jenne,

326 F.3d 1352, 1360 (11th Cir. 2003)); Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999);

Belcher v. City of Foley, 30 F.3d 1390, 1396 (11th Cir. 1994). "[A] plaintiff seeking to hold a

supervisor liable for constitutional violations must show that the supervisor either participated

directly in the unconstitutional conduct or that a causal connection exists between the supervisor's

actions and the alleged constitutional violation." Id.. (citing Cottone, 326 F.3d at 1360). "[T]he

standard by which a supervisor is held liable in [his] individual capacity for the actions of a

subordinate is extremely rigorous." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003),

abrogation in part on other grounds recognized by Stallworth v. Wilkins, 802 F. App'x 435 (11th

Cir. 2020); see also Iqbal, 556 U.S. at 677 ("In a § 1983 suit . . . – where masters do not answer

for the torts of their servants – the term 'supervisory liability' is a misnomer. Absent vicarious

liability, each Government official, his or her title notwithstanding, is only liable for his or her own

misconduct."). The Complaint fails to allege facts that plausibly meet this rigorous standard.

The Eleventh Circuit recently held, in a case involving St. Clair, that a plaintiff must show

"'more than a generalized awareness of risk' to make out a deliberate-indifference claim."

Marbury v. Warden, 936 F.3d 1227, 1234 (11th Cir. 2019); see also Harrison, 746 F.3d at 1299-

1300. Instead, "[t]o establish deliberate indifference based on a generalized risk, the plaintiff must

show 'that serious inmate-on-inmate violence was the norm or something close to it.'" Marbury,

936 F.3d at 1214 (quoting Purcell ex rel. Estate of Morgan v. Toombs Cnty., 400 F.3d 1313, 1320

(11th Cir. 2005)); Daniels v. Felton, 823 F. App'x 787, 790 (11th Cir. Aug. 11, 2020) (affirming

summary judgment for prison officials where plaintiff inmate failed to "identify any risk of harm

known to the defendants beyond the generalized danger of housing rival gang members in the same

prison"); Owens v. Sec'y, Fla. Dep't of Corr., 812 F. App'x 861 (11th Cir. 2020) (district court

properly granted summary judgment where defendant officer "might have been aware that a

general risk of inmate violence existed in Florida prisons").

Plaintiff attempts to plead around Marbury by making general and conclusory allegations of alleged "policies and practices" of failing to adequately protect vulnerable prisoners, separate prisoners known to be enemies, and segregate predatory prisoners." (Doc. 1, ¶ 234). These allegations represent an apparent attempt to squeeze the Complaint into the exception to Marbury that the Eleventh Circuit established in Dickinson v. Cochran, 833 F. App'x 268, 275 (11th Cir. 2020). In Dickinson, the Court held that Marbury's "violence-is-the-norm standard applies where a plaintiff alleges only a generalized risk and points to no 'specific features of a facility or its population rendering it particularly violent.'" The Court held that the Marbury standard did not apply to the allegations before it because the plaintiff "alleged overcrowding, failure to identify and segregate violent inmates, failure to properly search inmates, failure to limit contraband, and failure to adequately supervise inmates." 833 F. App'x at 275. Plaintiff's conclusory allegations, parroting some of the words from Dickinson but failing to provide any facts supporting the allegations, are insufficient to remove this action from the standard set forth in Marbury – which, like this action, addressed allegations of inmate-on-inmate violence at St. Clair. As the Eleventh Circuit held in Marbury, Plaintiff cannot allege that serious inmate-on-inmate violence is "the norm" at St. Clair.

Plaintiff's citations to other litigation and the DOJ's "Notice Letters" to ADOC (Doc. 1, ¶¶ 187-189) cannot save his claim. Plaintiff points to a lawsuit filed by the Equal Justice Initiative (the "EJI") in 2014 and individual inmate lawsuits regarding conditions at St. Clair filed in 2017. (Doc. 1, ¶¶ 166, 185). While the Complaint states that the EJI and individual inmate actions sought relief regarding conditions at St. Clair, Plaintiff fails to cite a single allegation from any of those complaints suggesting that inmate-on-inmate violence represents "the norm" at St. Clair.

Moreover, mere allegations in other lawsuits, absent court findings, cannot establish the Administrative Officials' knowledge of a substantial risk of serious harm from inmate-on-inmate violence sufficient to support individual-capacity claims against them. Finally, Plaintiff alleges that the DOJ issued Notice Letters regarding conditions in ADOC's male facilities in April 2019 and July 2020 – after the alleged attack on Plaintiff. (Doc. 1, ¶¶ 166, 185). Thus, the DOJ's April 2019 and July 2020 Notice Letters could not have "notified" the ADOC Officials of any risk of harm to Plaintiff in January 2019.[6]

While the allegations regarding the alleged assaults are certainly serious, the mere fact that Plaintiff suffered harm at the hands of other inmates, without more, cannot state a deliberate indifference claim. Swain, 961 F.3d at 1287 ("*A resulting harm thus cannot alone establish a culpable state of mind.*") (quoting Farmer v. Brennan, 511 U.S. 825, 844) (1994)) (emphasis added). Plaintiff failed to include allegations sufficiently tying the harm he suffered to any act or omission by any ADOC Official. Plaintiff's Complaint fails to plead facts giving rise to a plausible individual-capacity claim against the Administrative Officials, and Plaintiff's section 1983 claims are due to be dismissed.

### B. PLAINTIFF FAILS TO ALLEGE A SECTION 1983 RETALIATION CLAIM.

Plaintiff also fails to allege a claim for retaliation against the St. Clair Officials. To state a section 1983 claim for retaliation, Plaintiff must plead that: "(1) his speech was constitutionally protected; (2) [he] suffered adverse action such that the [St. Clair Officials'] allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3)

---

[6] Plaintiff alleges, "the DOJ filed a lawsuit on December 9, 2020." (Doc. 1, ¶ 190). Plaintiff fails to mention, however, that the DOJ's lawsuit, which purports to apply to fourteen (14) ADOC facilities for men, fails to reference even a single alleged incident at St. Clair. See U.S. v. Alabama, et al., 2:20-CV-01971-RDP (Doc. 1). The Court may take judicial notice of the DOJ complaint in considering this motion to dismiss. Halmos v. Bombardier Aerospace Corp., 404 F. App'x 376, 377 (11th Cir. 2010) (holding that "a district court may take judicial notice of matters of public record without converting a Rule 12(b)(6) motion into a Rule 56 motion").

there is a causal relationship between the retaliatory action and the protected speech. " Smith v. Mosley, 532 F.3d 1270, 1276 (11th Cir. 2008) (citing Bennett v. Hendrix, 423 F.3d 1247, 1250, 1254 (11th Cir. 2005)).  An inmate exercises his First Amendment right of free speech when he complains to the prison's administration about the conditions of his confinement.  Id.

Plaintiff's Complaint lacks any allegations to plausibly suggest a retaliation claim. Plaintiff's sole allegation relating to the St. Clair Officials and retaliation alleges, "ADOC staff routinely retaliated against prisoners who reported violence or threats of violence."  (Doc. 1, ¶ 243).  The Complaint does not even allege, however, that anyone associated with ADOC retaliated against Plaintiff individually – much less that any St. Clair Official engaged in any retaliatory act.  Plaintiff's claim for retaliation against the St. Clair Officials is due to be dismissed.

## IV.  THE DOCTRINE OF QUALIFIED IMMUNITY BARS PLAINTIFF'S CLAIMS AGAINST THE ADOC OFFICIALS IN THEIR INDIVIDUAL CAPACITIES.

Even if Plaintiff could allege an underlying constitutional violation on the part of any ADOC Official, Plaintiff fails to allege the type of conduct necessary to overcome qualified immunity and impose personal liability on these public servants.  "Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery."  Mitchell v. Forsyth, 472 U.S. 511, 526 (1985).  Thus, while qualified immunity is an affirmative defense, a defendant may raise it on a motion to dismiss where the facts establishing the defense are evident on the face of the complaint.  Iqbal, 556 U.S. at 672 (holding that qualified immunity represents "a limited 'entitlement not to stand trial or face the other burdens of litigation,'" and it is therefore appropriate for courts to decide the issue at an early stage, including at on a motion to dismiss) (quoting Mitchell, 472 U.S. at 526).  The Complaint articulates the facts establishing the ADOC Officials' entitlement to qualified immunity, and the Court should therefore dismiss the claims against the

ADOC Officials.

"Qualified immunity offers 'complete protection for government officials sued in their individual capacities so long as 'their conduct violates no clearly established statutory or constitutional rights which a reasonable person would have known.'" Lee v. Ferraro, 284 F.3d 1188, 1193-94 (11th Cir. 2002) (quoting Thomas v. Roberts, 261 F.3d 1160, 1170 (11th Cir. 2001)).   The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation.  See Anderson v. Creighton, 483 U.S. 635, 638 (1987); Lee, 284 F.3d at 1194   (internal citations omitted). "[Q]ualified immunity for government officials is the rule, liability and trials for liability [are] the exception."  Alexander v. Univ. of N. Fla., 39 F.3d 290, 291 (11th Cir. 1994).  Here, the rule unquestionably applies.

A public official must "first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."  Lee, 284 F.3d at 1194  (citing Courson v. McMillian, 939 F.2d 1479, 1487 (11th Cir. 1991) (internal citations omitted)).  Once the official establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that qualified immunity is not appropriate.  Id.  Courts apply a two-part test in evaluating whether a plaintiff carries this burden.  First, as a "threshold question," "taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  Id.   Then, if a constitutional right would have been violated under the plaintiff's version of the facts, the court must determine "whether the right was clearly established."  Lee, 284 F.3d at 1194.[7]

---

[7] In Pearson v. Callahan, the Supreme Court clarified that the order in which a court addresses each part of the qualified immunity analysis is not mandatory, but rather left to the sound discretion of the lower courts.  555 U.S. 223, 236-43 (2009).

Plaintiff does not dispute that the ADOC Officials acted within the scope of their discretionary authority. Indeed, the Complaint alleges that each ADOC Official "acted under color of law and within the scope of his or her employment." (Doc. 1, ¶ 14). Accordingly, Plaintiff cannot contest that the ADOC Officials were "(a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." Holloman ex rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004). Thus, the Complaint establishes that the ADOC Officials acted within their discretionary authority.

Because the ADOC Officials indisputably acted within their discretionary authority, Plaintiff must plausibly allege that the ADOC Officials violated a clearly established constitutional right. As set forth above, Plaintiff cannot state a plausible section 1983 claim against any ADOC Official. Accordingly, "'there is no necessity for further inquiries concerning qualified immunity.'" Harrison, 746 F.3d at 1299, n. 15 (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)). Even if Plaintiff properly alleged a constitutional violation (he did not and cannot), he cannot establish a violation of *clearly established* law. In considering whether alleged conduct violated clearly established law, courts "'look for 'fair warning' to [public officials] that the conduct at issue violated a constitutional right.'" Gaines v. Wardynski, 871 F.3d 1203, 1208 (11th Cir. 2017). Generally, a plaintiff seeking to demonstrate a violation of clearly established law must "point to prior case law (from the Supreme Court of the United States, the Eleventh Circuit, or the highest court in the relevant state) that is 'materially similar.'" Id. (quoting Jones v. Fransen, 857 F.3d 843, 851-52 (11th Cir. 2017)). The United States Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality." Iqbal, 563 U.S. at 742 (internal citations omitted). This standard is fatal to Plaintiff's claim against the ADOC Officials.

Plaintiff can point to no prior case law suggesting that the ADOC Officials should have been on notice that their conduct violated Plaintiff's constitutional rights. To the contrary, the case law plainly establishes that supervisory liability is not appropriate in these circumstances. See Marbury, 936 F.3d at 1233-38 (no liability where warden and correctional officer allegedly ignored plaintiff's requests for transfer before attack by fellow inmate and knew of a general risk of violence within the prison); Harrison, 746 F.3d at 1301-02 (no supervisory liability where complaint alleged that warden knew of incidents of inmate-on-inmate violence, but evidence did "not indicate that inmates were 'exposed to something even approaching the constant threat of violence'") (quoting Purcell ex rel. Estate of Morgan v. Toombs Cnty., Ga., 400 F.3d 1313, 1320 (11th Cir. 2005)); Cottone, 326 F.3d at 1362 (reversing district court's denial of motion to dismiss supervisory liability claims where supervisors did not participate in conduct leading to detainee's death). Thus, even if Plaintiff could plausibly allege that the ADOC Officials violated Plaintiff's constitutional rights (he cannot), he cannot allege a violation of clearly established law. The ADOC Officials remain entitled to qualified immunity from Plaintiff's individual-capacity claims.

## V. PLAINTIFF'S STATE-LAW CLAIMS ARE DUE TO BE DISMISSED.[8]

### A. THE ADOC OFFICIALS ARE ENTITLED TO STATE-AGENT IMMUNITY FROM PLAINTIFF'S STATE-LAW CLAIMS.

Plaintiff has not (and cannot) state a state-law intentional infliction of emotional distress or negligence claim against the ADOC Officials. (See infra Section IV. B.). However, even if Plaintiff could state such a claim, the ADOC Officials would be entitled to state-agent immunity under Alabama law. An Alabama state official receives immunity from all personal civil liability

---

[8] Aside from the substantive arguments requiring dismissal of Plaintiffs' state-law claims, the Court may simply decline to exercise supplemental jurisdiction over these claims under 28 U.S.C. § 1367(c)(3) after dismissing the federal claims. Woods v. Comm'r., Ala. Dept. of Corr., 951 F.3d 1288, 1295 (11th Cir. 2020) (citing Raney v. Allstate Ins. Co., 370 F.3d 1086, 1088-89 (11th Cir. 2004)) (following dismissal of all federal claims, Eleventh Circuit encourages dismissal of remaining state-law claims).

when the claim against the official arises from the official "formulating plans, policies, or designs" and/or "exercising his or her judgment in the administration of a department or agency of government, including, but not limited to . . . making administrative adjudications . . ., allocating resources," or "hiring, firing, transferring, assigning, or supervising personnel . . . ." Ex parte Butts, 775 So. 2d 173, 177-78 (Ala. 2000). This well-recognized immunity applies here.

The Alabama Supreme Court established a burden shifting process when a defendant raises the state-agent immunity defense. Ex parte Estate of Reynolds, 946 So. 2d 450, 452 (Ala. 2006). Under this framework, the "state-agent bears the burden of demonstrating that the plaintiff's claims arise from a function that would entitle the State agent to immunity." Id. (citations omitted). Once the official makes such a showing, "the burden then shifts to the plaintiff to show that the State agent acted willfully, maliciously, fraudulently, in bad faith or beyond his or her authority." Id.

Here, Plaintiff's allegations establish that the ADOC Officials are entitled to state-agent immunity under Alabama law. Plaintiff expressly alleges that each of the ADOC Officials acted within the scope of their employment, i.e., within their capacity as ADOC employees when engaging in the conduct described in the Complaint. (Doc. 1, ¶¶ 13, 16, 18, 24, 25, 26, 27, 28, 29, 32, 33, and 34). Further, the Alabama Supreme Court recognized that ADOC employees function as state officials and receive state-agent immunity when fulfilling the duties of their employment. Carpenter v. Tillman, 948 So. 2d 536, 538 (Ala. 2006). Unquestionably, the ADOC Officials are entitled to raise the defense of state-agent immunity here.

The burden now shifts to Plaintiff to establish the ADOC Officials acted "willfully, maliciously, fraudulently, in bad faith, or beyond his or her authority." Reynolds, 946 So. 2d at 452. Plaintiff relies exclusively on conclusory allegations parroting the words of the exception, and includes no facts supporting these allegations. In support of his intentional infliction of

emotional distress claim, Plaintiff alleges the ADOC Officials, and all other Defendants, "intended to cause, or acted in reckless disregard of the probability that they would cause," emotional distress to Plaintiff, and that the ADOC Officials, and all other Defendants, undertook their respective actions "with malice, willfulness, and reckless indifference to Plaintiff's rights." (Doc. 1, ¶¶ 327-328). As to negligence, Plaintiff, without supporting facts, pleads that the ADOC Officials, and all other Defendants, "breached [their] duty of care," and in so doing acted "willfully, maliciously, fraudulently, in bad faith, beyond their authority, or under a mistaken interpretation of the law," and that this supposed breach "directly and proximately caused Plaintiff to suffer damages." (Doc. 1, ¶¶ 331-334).

The Alabama Supreme Court directly addressed a situation in which a Plaintiff parroted the language from <u>Butts</u>, rather than including specific factual allegations supporting those conclusions. <u>See</u> <u>Ex parte Gilland</u>, 274 So. 3d 976, 985 n.3 (Ala. 2018) ("Although we are required to accept [plaintiff's] <u>factual</u> allegations as true at this stage of the proceedings, we are not required to accept her <u>conclusory</u> allegations that [defendant] acted willfully, maliciously, fraudulently, or in bad faith;" instead, plaintiff must "plead <u>facts</u> that would support those conclusory allegations"); <u>See also</u> <u>Shook v. Dunn</u>, Civil Action No. 2:18-cv-1048-MHT, 2020 WL 1492841, at *7 (M.D. Ala. Mar. 25, 2020) (citations omitted). Accordingly, state-agent immunity protects the ADOC Officials against Plaintiff's state-law claims for intentional infliction of emotional distress and negligence, and these claims are due to be dismissed.[9]

---

[9] Where the ADOC Officials performed under the administrative functions for their jobs, even if they made a mistake, "it is the protection of officials engaged in such discretionary activities that is the purpose of State-agent immunity." <u>Ex parte Hugine</u>, 256 So. 3d 30 (Ala. 2017); <u>see</u> <u>also</u> <u>Ex parte Moulton</u>, 116 So. 3d 1119, 1141 (Ala. 2013) (when claims against state officials are based on actions within the line and scope of the state officials' duties, the action is, in effect, an action against the State, and therefore barred by State immunity). Because the ADOC Officials, as alleged by the Plaintiff, operated at all times under their administrative duties, they are entitled to the protections of State-agent immunity as to the state law claims of intentional infliction of emotional distress and negligence.

**B.** **PLAINTIFF FAILS TO STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS AND NEGLIGENCE.**

Even if state-agent immunity did not apply, Plaintiff nonetheless failed to state a claim under state law. Plaintiff raises two state law claims against the ADOC Officials: state law intentional infliction of emotional distress and negligence. Plaintiffs fail to plead sufficient facts to support either claim against the ADOC Officials.

**1.** **PLAINTIFF FAILS TO STATE A CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS UNDER ALABAMA LAW.**

In order to plead a state intentional infliction of emotional distress ("IIED") claim under Alabama law, a plaintiff must plausibly allege "(1) that the defendants either intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from their conduct; (2) that the defendants' conduct was extreme and outrageous; and (3) that the defendants' conduct caused emotional distress so severe that no reasonable person could be expected to endure it." Drew v. Quest Diagnostics, 992 F.Supp.2d 1177, 1185-86 (N.D. Ala. 2014) (quoting Callens v. Jeff. Cnty. Nursing Home, 769 So. 2d 273, 281 (Ala. 2000) (citations omitted)). Plaintiff's Complaint is completely devoid of specific allegations to make out an IIED claim.

**2.** **PLAINTIFF FAILS TO STATE A CLAIM FOR NEGLIGENCE UNDER ALABAMA LAW.**

A plaintiff alleging negligence under Alabama law must plead "(1) a duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury." Lemley v. Wilson, 178 So.3d 834, 841 (Ala. 2015) (quoting Martin v. Arnold, 643 So.2d 564, 567 (Ala. 1994) (internal citations omitted)). Plaintiff alleges "Defendants" had a duty of care to Plaintiff, that they breached their duty, and in so doing acted willfully, maliciously, fraudulently, in bad faith, beyond their authority, or under a mistaken interpretation of the law. (Doc. 1, ¶¶ 331-333).

Plaintiff does not plead facts establishing a duty on behalf of any ADOC Official, nor does he even indicate which facts, if any, support a claim against each ADOC Official. Instead, he alleges only that "Defendants acted willfully, maliciously, fraudulently, in bad faith, beyond their authority, or under a mistaken interpretation of the law." (Doc. 1, ¶ 333). <u>See</u> <u>also</u> <u>Giambrone v. Douglas</u>, 874 So. 2d 1046, 1057 (Ala. 2003) ("The immunity afforded State agents who exercise their judgment . . . is not abrogated for negligent and wanton behavior.") Plaintiff provides no facts demonstrating that any of the ADOC Officials possessed a duty of care to Plaintiff, or, if any ADOC Official did possess such a duty, how he or she breached that duty. Plaintiff therefore failed to plead a viable negligence claim under Alabama law.

## CONCLUSION

For the foregoing reasons, the Complaint and all claims asserted against the ADOC Officials in the Complaint are due to be dismissed.

Dated: March 15, 2021.

/s/ William R. Lunsford
William R. Lunsford
*Attorney for the Defendants*

William R. Lunsford
Stephen C. Rogers
La Keisha W. Butler
**MAYNARD, COOPER & GALE, P.C.**
655 Gallatin Street, S.W.
Huntsville, AL 35801
Telephone: (256) 551-0171
Facsimile: (256) 512-0119
blunsford@maynardcooper.com
srogers@maynardcooper.com
lbutler@maynardcooper.com

<u>**CERTIFICATE OF SERVICE**</u>

        I hereby certify that a copy of the foregoing has been served upon all parties in this matter, including without limitation the following, by the Court's CM/ECF system or by U.S. Mail on this the 15th day of March, 2021:

| | |
|---|---|
| Ruth Z. Brown | Robert R. Northcutt |
| Megan Pierce | C. Richard Hill, Jr. |
| **LOEVY & LOEVY** | James N. Walter, Jr. |
| 311 N. Aberdeen, 3rd Floor | **CAPELL & HOWARD, PC** |
| Chicago, IL 60607 | P.O. Box 2069 |
| Telephone: (312)243-5900 | Montgomery, AL 36102 |
| Facsimile: (312)243-5902 | Telephone: (334) 241-8000 |
| ruth@loevy.com | Facsimile: (334) 323-8888 |
| megan@loevy.com | bob.northcutt@chlaw.com |
| | rick.hill@chlaw.com |
| | jimmy.walter@chlaw.com |
| Anil A. Mujumdar | |
| **DAGNEY JOHNSON LAW GROUP** | |
| 2170 Highland Avenue, Suite 250 | *Attorneys for Carl Sanders, Gary Malone,* |
| Birmingham, AL 35205 | *Kevin White, Carla Graham, Angelia* |
| Telephone: (205)590-6986 | *GordyWilliam Ragsdale,* |
| Facsimile: (205)809-7899 | *Neketris Estelle, Gerald McMillian,* |
| anil@dagneylaw.com | *Christopher Boyd, Shannon Caldwell, Errol Pickens,* |
| | *Lisa Bonner, Allen Knott, Earl Pickett,* |
| *Attorneys for Plaintiff* | *Steve Terry, and* |
| | *Tanya Ary* |

                                           */s/ William R. Lunsford*
                                           Of Counsel