**Case No.:  2:20-cv-02012-RDP**

## IN THE UNITED STATES DISTRICT COURT FOR
## THE NORTHERN DISTRICT OF ALABAMA
## (SOUTHERN DIVISION)

**D.S,**

**Plaintiff,**

**v.**

**JEFFERSON DUNN, et al.**

**Defendants.**

---

## MOVANTS' INITIAL SUBMISSION IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STRIKE PLAINTIFF'S FIRST AMENDED COMPLAINT

---

Robert F. Northcutt
C. Richard Hill
James N. Walter, Jr.
W. Jackson Britton

**CAPELL & HOWARD, P.C.**
150 South Perry Street
Montgomery, AL 36104
Phone: (334) 241-8000
Fax: (334) 323-8888
bob.northcutt@chlaw.com
rick.hill@chlaw.com
jimmy.walter@chlaw.com
jackson.britton@chlaw.com

*Attorneys for Defendants Carl Sanders, Gary Malone, Kevin White, Carla Graham, Angelia Gordy, William Ragsdale, Neketris Estelle, Gerald McMillian, Christopher Boyd, Shannon Caldwell, Errol Pickens, Lisa Bonner, William McLemore, and Tanya Ary*

# TABLE OF CONTENTS

INTRODUCTION.................................................................................................. 1

STANDARD OF REVIEW ................................................................................... 2

ARGUMENT ......................................................................................................... 3

   I.   **PLAINTIFF'S FIRST AMENDED COMPLAINT IS A SHOTGUN PLEADING THAT FAILS TO COMPLY WITH RULES 8(a)(2) AND 10(b).** ................................. 3

   II.  **PLAINTIF'S FIRST AMENDED COMPLAINT IS DUE TO BE DISMISSED PURSUANT TO RULE 12(b)(6).** ........................................................ 11

     A.   **ALL OF PLAINTIFF'S FOURTEENTH AMENDMENT CLAIMS ARE DUE TO BE DISMISSED.** .............................................................. 11

     B.   **QUALIFIED IMMUNITY BARS PLAINTIFF'S CLAIMS AGAINST DEFENDANTS.** ................................................................ 11

     C.   **DEFENDANTS CANNOT BE HELD VICARIOUSLY LIABLE.** ..................... 15

     D.   **PLAINTIFF DOES NOT ALLEGE SUFFICIENT FACTS TO SUPPORT A CLAIM FOR SUPERVISOR LIABILITY.** ........................................ 17

     E.   **PLAINTIFF'S FAILURE TO PROTECT AND STATE-CREATED DANGER CLAIMS ARE DUE TO BE DISMISSED.** ......................................... 19

     F.   **PLAINTIFF'S RETALIATION CLAIM IS DUE TO BE DISMISSED.** ........... 20

     G.   **PLAINTIFF'S FAILURE TO INTERVENE CLAIMS ARE DUE TO BE DISMISSED.** ............................................................... 20

     H.   **PLAINTIFF'S STATE LAW CLAIMS ARE DUE TO BE DISMISSED.** ......... 21

     I.   **PLAINTIFF'S CONSPIRACY CLAIMS ARE DUE TO BE DISMISSED.** ...... 23

CONCLUSION ..................................................................................................... 24

Defendants Carl Sanders ("Sanders"), Gary Malone ("Malone"), Kevin White ("White"), Carla Graham ("Graham"), Angelia Gordy ("Gordy"), William Ragsdale ("Ragsdale"), Neketris Estelle ("Estelle"), Gerald McMillian ("McMillian"), Christopher Boyd ("Boyd"), Shannon Caldwell ("Caldwell"), Errol Pickens ("Pickens"), Lisa Bonner ("Bonner"), William McLemore ("McLemore"), and Tanya Ary ("Ary") (collectively "Defendants") submit this Memorandum of Law in Support of their Motion to Dismiss or, in the Alternative, Motion to Strike Plaintiff's First Amended Complaint.

## INTRODUCTION

This action arises from alleged altercations between Plaintiff, D.S., and other inmates at William E. Donaldson Correctional Facility ("Donaldson") and at St. Clair Correctional Facility ("St. Clair") (Doc. 67 ¶¶ 1-7). Plaintiff's original complaint was 55-pages and consisted of 334 paragraphs of allegations (not including sub-parts). (Doc. 32-1). Defendants moved to dismiss the original complaint on multiple grounds including as a shotgun pleading, failure to state a cognizable claim against the Defendants, and the Defendants entitlement to qualified and state-agent immunity. (Docs. 60, 61). Instead of responding to Defendants' motion, Plaintiff filed its First Amended Complaint (Doc. 67).

Despite Plaintiff's attempt to correct the deficiencies the Defendants cited in their initial motion to dismiss, Plaintiff's First Amended Complaint remains a classic example of shotgun pleading that violates Federal Rules of Civil Procedure 8(a)(2) and 10(b). As shown in Section I herein, Plaintiff's First Amended Complaint names multiple defendants and contains well over 400 paragraphs of factual allegations (including sub-parts). It lumps multiple defendants together

1

in an effort to avoid pleading its claims with specificity. The First Amended Complaint is replete with vague, immaterial, and conclusory allegations not related to any particular cause of action. The counts in Plaintiff's First Amended Complaint further compound the deficiencies by incorporating many of the afflicted "factual" allegations, while committing several pleading sins of their own. Plaintiff's First Amended Complaint should be dismissed with prejudice or Plaintiff should be required to replead his claims in compliance with Rules 8(a)(2) and 10(b). Further, Plaintiff's First Amended Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for the additional reasons detailed in Section II herein, including that Plaintiff's First Amended Complaint fails to state cognizable claims against Defendants and Defendants are entitled to qualified immunity and state agent immunity.

## **STANDARD OF REVIEW**

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court must construe the complaint in the light most favorable to the plaintiff and accept all well-pled facts alleged in the complaint as true; however, the court is not required to accept a plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."). In evaluating the sufficiency of a plaintiff's pleadings, a court can make reasonable inferences in the plaintiff's favor, but it is "not required to draw [p]laintiff['s] inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. *Id.* (internal quotation and citation omitted); *see also Iqbal*, 556 U.S. at 681 (stating conclusory allegations are "not entitled to be assumed true" citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007)). Indeed, to survive a motion to dismiss, the complaint

must contain factual matter, the sufficiency of which states "a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Simply stated, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

As this Court has noted, "[d]istrict courts have the inherent authority to dismiss complaints on shotgun pleading grounds." *Cincinnati Ins. Co. v. Samsung SDI Co. Ltd.,* 2018 WL 3928995, at *3 (N.D. Ala. Aug. 16, 2018) (citing *Vibe Micro, Inc. v. Shabanets,* 878 F.3d 1291, 1295 (11th Cir. 2018)). "In dismissing a shotgun complaint…a district court must give the plaintiff 'on chance to remedy such deficiencies.'" *Jackson v. Bank of America, N.A.*, 898 F.3d 1348, 1358 (11th Cir. 2018) (quoting *Vibe Micro*, 878 F.3d at 1295). However, a district court may dismiss an amended complaint <u>with prejudice</u> if "the plaintiff had fair notice of the defects and a meaningful chance to fix them." *Id.*

## ARGUMENT

## I.  PLAINTIFF'S FIRST AMENDED COMPLAINT IS A SHOTGUN PLEADING THAT FAILS TO COMPLY WITH RULES 8(a)(2) AND 10(b).

Plaintiff's First Amended Complaint is a shotgun pleading that fails to comply with federal pleading standards.  As the Eleventh Circuit recently stated in *Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021):

> A shotgun pleading is a complaint that violates either Federal Rule of Civil Procedure 8(a)(2) or Rule 10(b), or both.  Rule 8(a)(2) requires the complaint to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 10(b) requires a party to "state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances."  Fed. R. Civ. P. 10(b).  "If doing so would

promote clarity," Rule 10(b) also mandates that "each claim founded on a separate transaction or occurrence … be stated in a separate count …" *Id.* The self-evident purpose of these rules is to require the pleader to present his claims discretely and succinctly, so that his adversary can discern what he is claiming and frame a responsive pleading. These rules were also written for the benefit of the court, which must be able to determine which facts support which claims, whether the plaintiff has stated any claims upon which relief can be granted, and whether evidence introduced at trial is relevant.

(quotation marks and citations omitted).

The Eleventh Circuit has "identified four rough types or categories of shotgun pleadings."

*Id.* (internal citation omitted). It has described those categories as follows:

The first is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint. The second is a complaint that is replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action. The third is a complaint that does not separat[e] each cause of action or claim for relief into a different count." And the final type of shotgun pleading is a compliant that assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against.

*Id.* at 1324-1325 (quotation marks and citations omitted).

This Court and the Eleventh Circuit have repeatedly and vehemently condemned shotgun pleadings. *See, e.g., id.; Hirsch v. Ensurety Ventures, LLC*, 805 F. App'x 987, 991 (11th Cir. 2020) ("And lest it need still be said, shotgun pleadings do not comport with the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure and the Supreme Court's instructions laid out in *Bell Atl. Corp v. Twombly* and *Ashcroft v. Iqbal*."); *Est. of Bass v. Regions Bank*, 947 F.3d 1352, 1356 n.3 (11th Cir. 2020) ("As of 2008, [the Eleventh Circuit] had explicitly condemned shotgun pleadings upward of fifty times.") (internal quotation marks and citation omitted); *Fed. Home Mortg. Corp. v. McGough*, 2018 WL 5116844, at *1 (N.D. Ala. Oct. 19,

2018) ("The Eleventh Circuit has repeatedly stated that such [shotgun] pleadings exact an intolerable toll on the trial court's docket, lead to unnecessary and unchanneled discovery, and impose unwanted expense on the litigants, the court and the court's parajudicial personnel and resources.") (internal quotation marks and citation omitted).

The Plaintiff's First Amended Complaint contains many of the same deficiencies that this Court has previously found as grounds to strike or dismiss individual claims and entire complaints. *Pipkins v. City of Hoover*, 2:19-CV-1907-RDP, 2021 WL 718583, at *6 (N.D. Ala. Feb. 24, 2021) (slip copy) (dismissing counts asserting multiple causes of action as shotgun pleading); *Watts v. SMP Auto*, 2:20-CV-405-RDP, 2021 WL 972882, at *3-4 (N.D. Ala. Feb. 9, 2021) (slip copy); *Hamilton v. Judicial Corr. Svcs. LLC*, 2:18-cv-00933-RDP, 2019 WL 5964977, at *3 (N.D. Ala. Nov. 13, 2019) (slip copy); *Est. of Binn v. City of Adamsville*, 2:17-cv-01993-RDP, 2019 WL 968904, at *7 (N.D. Ala. Feb. 28, 2019) (dismissing shotgun claim); *Rice v. Seterus, Inc.*, 7:17-cv-00732-RDP, 2018 WL 4052180, at *2-3 (N.D. Ala. Aug. 24, 2018); *Cincinnati Ins. Co. v. Samsung SDI Co. Ltd.*, 5:17-cv-01688-UJH-RDP, 2018 WL 3928995, at *3-4 (N.D. Ala. Aug. 16, 2018) (striking shotgun complaint); *Johnson v. City of Homewood*, 2:15-cv-02036-RDP, 2018 WL 497077, at *6-7 (N.D. Ala. Jan. 22, 2018) (dismissing multiple shotgun claims without prejudice). Ultimately, Plaintiff's First Amended Complaint and the complaints in the cases cited above share one "unifying characteristic": "they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland*, 792 F.3d at 1323.

First, Plaintiff's First Amended Complaint consistently lumps Defendants together and only halfheartedly attempts to make allegations that are specific to individual defendants.

Plaintiff's First Amended Complaint references either all "defendants",[1] groups of defendants,[2] groups of defendants that "includes" individual defendants,[3] or each individual defendant in a group so as to avoid saying the group name.[4] The First Amended Complaint also has features that exacerbate this problem. The First Amended Complaint frequently refers to "these Defendants" after referencing a lump of defendants,[5] and each count incorporates many of the same deficient allegations cited above.[6]

The First Amended Complaint's lumping of Defendants together and failure to plead specific factual allegations as to each defendant makes the First Amended Complaint a shotgun pleading. *See Barmapov*, 986 F.3d at 1325; *Magluta v. Samples*, 256 F.3d 1282, 1284 (11th Cir. 2001) ("The complaint is replete with allegations that 'the defendants' engaged in certain conduct, making no distinction among the fourteen defendants…"); *see e.g., Hamilton*, 2019 WL 5964977, at *3 (finding shotgun complaint that referenced individual defendants but "lump[ed]" them

---

[1] For blanket references to "defendants," *see* Doc. 67 at ¶¶ 5-7, 74, 86, 105, 186, 239, 251, 288, 289, 291, 293, 294, 306, 311, 323, 325, 333, 336-338, 342, 363, 368, 371, 393.

[2] For blanket references to groups of defendants: Donaldson Defendants, (¶¶ 54, 64, 68, 385, 395, 397); St. Clair Defendants, (¶¶ 76, 78, 87, 89, 102, 110, 162, 208-210, 217, 260, 261, 277, 360, 369, 390, 391); St. Clair Defendant ADOC Supervisors or St. Clair Facility Supervisors, (¶¶ 29, 41-42, 164, 169, 175-177, 183-184, 187, 211, 252, 276).

[3] The inclusion of specific individuals is meaningless and mere surplusage because the named individuals are already members of the named group. (*See* Doc. 67 at ¶¶ 54, 66, 74, 76, 86, 87, 102, 110, 162, 164, 169, 175, 176, 184, 186, 187, 211, 239, 260, 276, 277).

[4] For allegations naming every individual defendant in a specific group: Donaldson Defendants, (Doc. 67 at ¶¶ 53, 55, 58, 59, 63, 65-67, 71, 325, 329, 355, 364); St. Clair Defendants, St. Clair Defendant ADOC Supervisors, St. Clair Defendant Facility Supervisors, or combination, (Id. at ¶¶ 168, 172, 173, 189, 192, 193, 212, 241, 249-251, 255, 257, 293, 309, 340, 368).

[5] For Complaint's reference to "these Defendants," compounding the problem of its blanket references to groups of defendants, *see* Doc. 67 at ¶¶ 77, 213-215, 233, 235, 236, 269, 280, 310, 312, 326, 327, 330, 331, 335, 341, 356, 357, 361, 366, 370, 386, 392, 396, 398.

[6] For each count's incorporation by reference of deficient "factual" allegations, *see* Doc. 67 at ¶¶ 293-294, 307, 325, 329, 335, 339, 355, 360, 364, 367, 384, 389, 394.

together when describing what actions injured plaintiff, such as "'Defendants JCS, CHC, and CCS contracted with the municipalities…'"); *Est. of Binn*, 2019 WL 968904, at *7 (citing vague allegations as to individual defendants roles and lumping of "defendants" together as reason to dismiss complaint as shotgun pleading). Accordingly, Plaintiff's First Amended Complaint is due to be stricken or dismissed on this ground alone. *See Cincinnati Ins. Co.*, 2018 WL 3928995, at *3-4.

Plaintiff's First Amended Complaint, however, contains many other deficiencies that make it a shotgun pleading. It contains many allegations that are so vague, conclusory, and non-specific that they fail to provide notice to any defendant. *Weiland*, 792 F.3d at 1324. The First Amended Complaint contains vague allegations that allege some kind of action or knowledge but fail to specify who the individual actor was or who possessed the knowledge. (*See e.g.,* Doc. 67. at ¶¶ 237, 238, 260, 261). These deficiencies add to the First Amended Complaint's shotgun-style. *Ebrahimi v. City of Huntsville Bd. of Educ.*, 114 F.3d 162, 164 (11th Cir. 1997) (finding "prototypical shotgun complaint" where it "offered vague and conclusory factual allegations in an effort to support a multiplicity of…claims leveled against 15 defendants."); *see e.g., Cincinnati Ins. Co.*, 2018 WL 3928995, at *3-4 (striking complaint as shotgun pleading due to allegations being "so non-specific" that they failed to give defendants sufficient notice).

The First Amended Complaint also includes immaterial allegations that do not relate to any of the thirteen causes of action that Plaintiff asserts in the First Amended Complaint. It contains allegations concerning events that occurred after Plaintiff's last alleged assault on January 29, 2019 at St. Clair, (*See* Doc. 67 at ¶¶ 188-192). The alleged events occurred after any time period that

could be potentially relevant to any of Plaintiff's causes of action.[7] *See Watts*, 2021 WL 972882, at *3-4 (finding shotgun pleading due to, in part, immaterial factual allegations concerning events occurring after the injury and timeframe relevant to the causes of action). Many of the letters, lawsuits, investigations, and reports referenced in the First Amended Complaint are also immaterial because they concern the ADOC system as a whole and were not focused specifically on St. Clair or Donaldson so as to provide the Defendants with alleged notice of unconstitutional conditions at those particular facilities. (*See* Doc. 67 at ¶¶ 67, 171-172, 188-190). The First Amended Complaint also contains immaterial allegations concerning alleged instances of excessive force. (*See* Doc. 67 at ¶¶ 281-290). The allegations concerning excessive force are immaterial because the First Amended Complaint does not assert any cause of action for excessive force, any allegations that Plaintiff was subject to excessive force, or in any way connects the excessive force allegations to any cognizable cause of action asserted therein. *See e.g., Watts*, 2021 WL 972882, at *3-4 (finding shotgun pleading due to, in other part, failure to tie factual allegations to any legal claim). Moreover, like the allegations that lumped defendants together, the First Amended Complaint compounds the problem presented by these immaterial allegations by incorporating many of the allegations into the counts asserted therein. (*See* Doc. 67 at ¶¶ 293-294, 307, 325, 329, 335, 339, 355, 360, 364, 367, 384, 389, 394). Accordingly, the multiple immaterial allegations in the First Amended Complaint, alone, make it a shotgun pleading, but, in tandem with the allegations lumping defendants together, undoubtedly render the First Amended Complaint a shotgun pleading that should be stricken or dismissed. *See Barmapov*, 986 F.3d at

---

[7] Most notably, some of these events and documents referenced in the allegations occurred well-after the last alleged assault, such as the DOJ Notice Letter issued in July 2020 (Doc. 67 ¶ 188)—a year-and-a-half after the last alleged assault—and the DOJ lawsuit filed on December 9, 2020 (Id. at ¶ 191)—almost a full two years after the last alleged assault.

1325; *see also Pelletier v. Zweifel*, 921 F.2d 1465, 1518 (11th Cir. 1991) (shotgun complaint where it was "replete with factual allegations that could not possibly be material to any of the causes actions they assert.").

Lastly, the individual counts of Plaintiff's First Amended Complaint are also shotgun claims. As discussed above, each count incorporates or repeats many of the deficiencies cited in the factual allegations.[8] In addition, many of the counts suffer from their own independent deficiencies despite incorporating deficiencies from the "factual" allegations. (*See e.g.,* Doc. 67 at ¶¶ 360-366 (asserting failure to intervene claims against "All St. Clair Defendants," without ever naming an individual defendant, and "All Donaldson Defendants," while naming every individual in the group)).[9] Some counts in Plaintiff's First Amended Complaint state multiple claims for relief for alleged violations of multiple Constitutional Amendments. (*See* Doc. 67 at Counts II, IV, and V). Some counts also contain allegations that assert or create a whole new cause of action independent of the claim labeled on the count. (*See* Doc. 67 at ¶¶ 293, 302, 325, 341, 345, 356, 392, 397). Ultimately, Plaintiff's First Amended Complaint does not contain a single count that is unafflicted by these shotgun pleading deficiencies.

As a result of the deficiencies noted above, Plaintiff's First Amended Complaint is due to be dismissed with prejudice or, in the alternative, struck as a shotgun pleading. A district court may dismiss a shotgun complaint with prejudice when "the plaintiff had fair notice of the defects and a meaningful chance to fix them." *Jackson,* 898 F.3d at 1358. A defendant's motion to dismiss

---

[8] *See* infra at footnotes 5 and 6.

[9] *See also* Count I (¶¶ 293, 294, 306); Count II (¶¶ 309-312, 323); Count III (¶¶ 325-327); Count IV (¶¶ 329-331, 333); V (¶¶ 335-338); Count VI (¶¶ 340-342); Count VII (¶¶ 355-357); Count VIII (¶¶ 360-361, 363); Count IX (¶¶ 364, 366); Count X (¶¶ 368-369, 370); Count XI (¶¶ 385-386); Count XII (¶¶ 390-393); Count XIII (¶¶ 396, 393).

may provide a plaintiff with fair notice of the defects in a complaint. *Id*. And "[a] chance to amend a complaint does not need to come in the form of dismissal without prejudice or the striking of a portion of the complaint's allegations." *Id.* "What matters is function, not form." *Id*.

Here, the circumstances warrant dismissal of Plaintiff's First Amended Complaint with prejudice. Plaintiff received fair notice of the pleading deficiencies in his original Complaint (Doc. 32-1) via defendants' two Motions to Dismiss (Docs. 59, 61). *See Jackson*, 898 F.3d at 1358. Plaintiff then received the opportunity to amend and filed the present First Amended Complaint "[i]n response to the motions to dismiss." (Doc. 64 ¶ 4). Despite receiving fair notice and an opportunity to amend, Plaintiff's First Amended Complaint did not meaningfully remedy the deficiencies, and even added to the already lengthy list of defects cited in defendants' motions. Even if Plaintiff's First Amended Complaint corrected some of the deficiencies that were in Plaintiff's original Complaint, these corrections do not excuse the new and still existing defects in the First Amended Complaint. *Barmapov*, 986 F.3d at 1325; *Rice*, 2018 WL 4052180, at *2 n.3 (noting the existence of some well-plead claims did not excuse the deficiencies in other claims). Accordingly, Plaintiff's First Amended Complaint should be dismissed with prejudice or, in the alternative, struck as a shotgun pleading. *Jackson*, 898 F.3d at 1359-59; *Cincinnati Ins. Co.,* 2018 WL 3928995 at *3.

## II.  PLAINTIF'S FIRST AMENDED COMPLAINT IS DUE TO BE DISMISSED PURSUANT TO RULE 12(b)(6).[10]

### A.  ALL OF PLAINTIFF'S FOURTEENTH AMENDMENT CLAIMS ARE DUE TO BE DISMISSED.

In Counts II, IV, and V of the First Amended Complaint (Doc. 67 ¶¶ 307-323, 328-333, 334-338), Plaintiff includes claims for violations of constitutional rights pursuant to the Fourteenth Amendment. These claims are due to be dismissed as the Fourteenth Amendment has no application to Plaintiff. Rather, only the Eighth Amendment applies to claims regarding conditions of confinement for those convicted of crimes and housed in prisons. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994).

### B.  QUALIFIED IMMUNITY BARS PLAINTIFF'S CLAIMS AGAINST DEFENDANTS.

Plaintiff sues the Defendants in their individual capacities. (Doc. 67 ¶ 12). The long-recognized doctrine of qualified immunity protects government officers when they are sued in their individual capacities from liability for civil damages so long as "their conduct [did] not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) ("Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct.").

A public official seeking the protection of qualified immunity "must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred."

---

[10] In addition to the arguments set forth below, Defendants adopt and incorporate herein all grounds and arguments for dismissal of the First Amended Complaint asserted by other defendants.

*Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (internal quotation marks and citation omitted). The burden then shifts to the plaintiff "to show that (1) the officer violated a constitutional right and (2) the right was clearly established at the time of the alleged violation." *Piazza v. Jefferson Cnty., Ala.,* 923 F.3d 947, 951 (11th Cir. 2019) (citing *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004)). A court "may consider these two prongs in either order; an official is entitled to qualified immunity if the plaintiff fails to establish either." *Id.* (citing *Jacoby v. Baldwin Cnty.*, 835 F.3d 1338, 1344 (11th Cir. 2016)).

Throughout the analysis, it must be kept in mind that "qualified immunity for government officials is the rule, liability and trials for liability the exception." *Alexander v. Univ. of N. Fla.*, 39 F.3d 290, 291 (11th Cir. 1994). As this Court has stated, "[t]he Court must consider the defense of qualified immunity as soon as possible in the litigation, including at the motion to dismiss stage." *Hadder v. Walker Cnty., Ala.*, 2014 WL 2465322, at *4 (N.D. Ala. May 30, 2014) (citing *Hunter v. Bryant*, 502 U.S. 224, 223-34 (1991)). Further, the Eleventh Circuit recently observed: "Generally speaking, it is proper to grant a motion to dismiss on qualified immunity grounds when the 'complaint fails to allege the violation of a clearly established constitutional right.'" *Dickinson v. Cochran*, 833 F. App'x 268, 271 (11th Cir. 2020) (quoting *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (further internal citation omitted)).

A government employee acts within his discretionary authority when he is "(a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." *Holloman*, 370 F.3d at 1265. The question at this stage is not "whether the act complained of was done for improper purpose, but 'whether the act complained of, if done for a proper purpose, would be within, or reasonably related to, the outer perimeter of an official's discretionary duties.'" *Plotkin v. United States*, 465 F. App'x 828, 831-32 (11th Cir. 2012)

(quoting *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1282 (11th Cir. 1998)). The only question to consider is whether the acts "are of a type that fell within the employee's job responsibilities." *Holloman*, 370 F.3d at 1265.

Here, it is undisputed that Defendants were acting within their discretionary authority. Plaintiff's First Amended Complaint makes no allegation that the actions of these Defendants were outside the line and scope of their duties as employees of the Alabama Department of Corrections ("DOC"). To the contrary, Plaintiff's First Amended Complaint alleges the Defendants were acting within the line and scope of their employment and performing their duties as DOC employees. (*See e.g.,* Doc. 67 ¶ 13).

Once discretionary authority is established, a court is "obliged to grant qualified immunity to a law enforcement officer unless the plaintiff can demonstrate: first, that the facts when viewed in a light most favorable to the plaintiff establish a constitutional violation; and, second, that illegality of the officer's actions was clearly established at the time of the incident." *Oliver v. Fiorino*, 586 F.3d 898, 905 (11th Cir. 2009) (citing *Pearson v. Callahan*, 555 U.S. 223, 232, 235 (2009)). Thus, to survive a motion to dismiss, Plaintiff must present a plausible claim that a constitutional violation occurred and that these Defendants' conduct clearly violated established law. *See Iqbal*, 556 U.S. at 678.

Plaintiff's First Amended Complaint fails to present a plausible claim that a constitutional violation occurred or that these Defendants' conduct clearly violated established law. Plaintiff alleges that a prior class-action lawsuit, a DOJ investigation and an Equal Justice Initiative report put these Defendants on notice that their conduct clearly violated established law. (Doc. 67 ¶¶ 166-192). As mentioned above, some of these documents and events could not have given Defendants

prior notice of the events at St. Clair or Donaldson as many of them occurred well-after the Plaintiff's alleged assault.

Even assuming that the Plaintiff had alleged facts which could support a violation of constitutional rights, the alleged lawsuit, investigation and reports are not binding precedent that would have put these Defendants on notice that their conduct clearly violated established law. "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right. In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (internal quotation marks and citations omitted) (alteration in original). The Court should look "only to binding precedent—cases from the United States Supreme Court, the Eleventh Circuit, and the highest court of the state under which the claim arose—to determine whether the right in question was clearly established at the time of the violation." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (citation omitted). Moreover, "[w]hile multiple cases in this Circuit have put prison officials on notice that they have a duty to protect inmates from violence at the hands of other inmates, each of those cases has required that the prison officials in question have more than a generalized idea that the plaintiff could be subjected to violence." *Marbury v. Estes*, 2017 WL 2060346, at *8 (N.D. Ala. May 1, 2017).

Here, Plaintiff has alleged no clearly established law or existing precedent that would have provided these Defendants with "fair warning" that his or her conduct as correctional officers at Donaldson or St. Clair deprived the Plaintiff of a constitutional right. To the contrary, the Eleventh Circuit held at the approximate time of the inmate-on-inmate attack at issue here that "the evidence [the plaintiff] has presented regarding a general risk of inmate-on-inmate violence [at St. Clair] does not rise to the level necessary to show deliberate indifference to a substantial risk of serious

harm required by our caselaw." *Marbury v. Warden*, 936 F.3d 1227, 1235 (11th Cir. 2019). The plaintiff in *Marbury* was attacked by a fellow prisoner at St. Clair after making multiple requests to be transferred to a different dormitory or put in protective lock-up. He sent letters to the warden and made several in-person transfer requests to a prison officer before being stabbed and assaulted by another inmate. Based on those facts—which provide far more notice of a risk of harm to the inmate than Plaintiff's alleged statements that he had enemies relating to a 2018 attack at another prison (Doc. 67 ¶¶ 50, 74)—the Eleventh Circuit affirmed the district court's order granting the St. Clair's warden's and officer's motions for summary judgment based on qualified immunity. *Id.* at 1232-38.[11]

Accordingly, Plaintiff cannot present a plausible claim that a constitutional violation occurred and that these Defendants' conduct clearly violated established law when both this Court and the Eleventh Circuit held otherwise with respect to an inmate-on-inmate assault at St. Clair based upon facts that were similar to those alleged in Plaintiff's First Amended Complaint here.

## C. DEFENDANTS CANNOT BE HELD VICARIOUSLY LIABLE.

Defendants Sanders, Malone, White, Graham, Estelle, Gordy, Ragsdale, and Boyd are alleged to be liable based on the activities of subordinate employees. These Defendants cannot be held vicariously liable for the alleged wrongdoing of a subordinate employee because Plaintiff brings his claims pursuant to 42 U.S.C. § 1983. It is well accepted in the Eleventh Circuit under § 1983 principles that supervising officials cannot be held liable for the unconstitutional acts of subordinates under a theory of respondeat superior or vicarious liability. *Hartley v. Parnell*, 193

---

[11] In the year prior to the incidents at issue in the present case, Magistrate Judge England's Report and Recommendation in the *Marbury* case recommended that the motion for summary judgment be granted, and Judge Kallon entered a Memorandum Opinion adopting and accepting that recommendation. *See Marbury v. Estes*, 2017 WL 2021071 (N.D. Ala. May 12, 2017); *Marbury*, 2017 WL 2060346.

F.3d 1263, 1269 (11th Cir. 1999) (citing *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994)). Instead, the Eleventh Circuit previously stated that a plaintiff may only pursue supervisor liability when:

> the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions of the supervising official and the alleged constitutional deprivation. The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences.

*Hartley*, 193 F.3d at 1269 (quoting *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990)) (internal quotations omitted).

Here, Plaintiff's First Amended Complaint falls well below the pleading standard imposed by Rule 12 and *Hartley*. For example, Plaintiff merely alleges that these supervisory Defendants are somehow responsible for Plaintiff's alleged constitutional violations but does not allege any specific conduct these Defendants participated in that resulted in the alleged constitutional violation.

In an attempt to remedy his failure to plead specific allegations against these supervisory Defendants, Plaintiff apparently contends that it was the policies and customs of the Defendants somehow that caused the altercations between Plaintiff and other inmates. This is insufficient under § 1983 jurisprudence. As stated above, a plaintiff seeking to recover from a supervisor under § 1983 must show that the complained of conduct was so obvious, flagrant, rampant, and of continued duration such that the defendants were put on notice. *Hartley*, 193 F.3d at 1269. Plaintiff has failed to do that here. Instead, Plaintiff relies on allegations of isolated incidents to attempt to prove his claim. These attempts are insufficient to state a claim against these Defendants.

A plaintiff's complaint must establish facial plausibility by pleading facts sufficient to permit the "court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plaintiff's First Amended Complaint fails to make such factual allegations and, instead, makes the "[t]hreadbare recitals of the elements of a cause of action" and "conclusory statements" that are insufficient to satisfy facial plausibility. *Id.* Similarly, Plaintiff's First Amended Complaint is rife with legal conclusions that are not entitled to the presumption of truth. *See id.* at 680. Because Plaintiff's First Amended Complaint merely makes conclusory statements of liability against these Defendants without any factual support to the statements, Plaintiff failed to set forth a claim upon which this Court could grant relief. Therefore, Defendants' Motion to Dismiss is due to be granted as to these Defendants.

### D. PLAINTIFF DOES NOT ALLEGE SUFFICIENT FACTS TO SUPPORT A CLAIM FOR SUPERVISOR LIABILITY.

Plaintiff's First Amended Complaint is deficient and should be dismissed because Plaintiff failed to allege sufficient facts to support the claim for Eighth Amendment supervisor liability. In order to succeed on his claims against these Defendants, Plaintiff must prove the Defendants acted "with deliberate indifference, [and] exposed [the Plaintiff] to a sufficiently substantial 'risk of serious damage to his future health.'" *Farmer*, 511 U.S. at 843 (citing *Helling v. McKinney*, 509 U.S. 25, 35 (1993)). The standard for deliberate indifference is akin to criminal negligence such that a plaintiff must prove all of the following: (1) the defendant knew of and disregarded "an excessive risk to inmate health or safety;" (2) the defendant was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed;]" and (3) the defendant "must also draw that inference." *Id.* at 837. Further, the condition must be "extreme" such that there is a "strong likelihood of injury, rather than a mere possibility, before an official's failure to act can constitute deliberate indifference." *Est. of Owens v. GEO Grp., Inc.*, 660 F. App'x 763,

767 (11th Cir. 2016) (citations and internal quotations omitted). Therefore, Plaintiff must show significantly more than mere civil recklessness or negligence. *See Losey v. Warden*, 521 F. App'x 717, 720 (11th Cir. 2013).

In addition to establishing an Eighth Amendment duty to act, the Plaintiff must prove a "necessary causal link" between the defendant's conduct and harm to the inmate. *See Rodriguez*, 508 F.3d at 622. To resolve whether the necessary causal link is established, the court must individually analyze the prison official's "duties, discretion, and means." *Williams v. Bennett*, 689 F.2d 1370, 1384 (11th Cir. 1982). Elaborating further, in *Williams* the Eleventh Circuit stated:

> [t]here can be no duty, the breach of which is actionable, to do that which is beyond the power, authority, or means of the charged party. One may be callously indifferent to the fate of prisoners and yet not be liable for their injuries. Those whose callous indifference results in liability are those under a duty-possessed of authority and means-to prevent the injury.

*Id.* Thus, the Plaintiff must also prove that these Defendants were empowered to protect against the risk of the harm.

Finally, the *Farmer* Court identified the following three methods for a prison official to avoid Eighth Amendment liability: (1) the prison official "did not know of the underlying facts indicating a sufficiently substantial danger and that they were unaware of that danger[;]" (2) the prison official "knew of the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent[;]" or (3) if the prison official "responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844-45.

The standard for deliberate indifference equates to recklessness in criminal law and is subjective. *Farmer*, 511 U.S. 839-40. Only the unnecessary and wanton infliction of pain violates the Eighth Amendment. *Id.* at 834. Obduracy and wantonness, not inadvertence or error in judgment, are required. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Nothing in Plaintiff's First

Amended Complaint can be read to rise to the level of obduracy and wantonness on the part of these Defendants.

**E. PLAINTIFF'S FAILURE TO PROTECT AND STATE-CREATED DANGER CLAIMS ARE DUE TO BE DISMISSED.**

Plaintiff's allegations against Defendants do not show the Defendants were deliberately indifferent and thus Plaintiff's failure to protect claims in Counts I and III, and state-created danger claims in Counts II and IV of the First Amended Complaint are due to be dismissed. (Doc. 67 ¶¶ 292-333). Plaintiff generally alleges that Defendants housed Plaintiff with known enemies after transferring him from segregation to general population. (Doc. 67 at ¶¶ 54, 78). However, this does not constitute deliberate indifference. *Marbury*, 936 F.3d at 1231-35.

As previously discussed, in *Marbury*, an inmate at St. Clair Correctional Facility complained of an assault by another inmate, 936 F.3d at 1231. Before the assault, the *Marbury* plaintiff told the corrections staff that he had witnessed fifteen stabbings over a six-year period and that there was a specific threat made against him. In addition, he had lodged numerous requests for transfer and protective custody. *Id.* at 1233. The Eleventh Circuit found that these allegations were insufficient to establish deliberate indifference. The Court determined that the evidence did not indicate that the inmates at St. Clair were "'exposed to something even approaching the constant threat of violence.'" *Id.* at 1235 (quoting *Harrison v. Culliver*, 746 F.3d 1288, 1299-1300 (11th Cir. 2014)). The *Marbury* plaintiff's evidence of communications of threats against him by other inmates was much more compelling and detailed than Plaintiff's allegations here that he advised some Defendants that he had enemies in the prison population. Therefore, the allegations of Plaintiff's First Amended Complaint are insufficient to state cognizable claims of failure to protect or state-created danger in Counts I through IV these Defendants and should be dismissed.

19

### F.    PLAINTIFF'S RETALIATION CLAIM IS DUE TO BE DISMISSED.

Plaintiff alleges in Count V (Doc. 67 ¶¶ 334-338) that Defendants subjected Plaintiff to segregation and exposure to his enemies to retaliate against him for reporting a sexual assault in violation of his First Amendment rights.  Not only does Plaintiff fail to plead sufficient facts to state a cognizable claim of retaliation, but the Prison Litigation Reform Act, 42 U.S.C. § 1997e ("PLRA"), also bars Plaintiff's claim. Plaintiff alleges emotional pain and suffering as damages for this claim.  (Doc. 67 ¶ 338).  However, the PLRA, § 1997e(e), provides: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." *Al.-Amin v. Smith,* 637 F.3d 1192, 1195 (11th Cir. 2011), *overruled on other grounds Hoever v. Marks*, No. 17-10792, 2021 WL 1326618 (11th Cir. April 9, 2021) (holding—and partially overruling *Al-Amin*—§ 1997e(e) allows purely mental and emotional claims for punitive damages, but still bars claims for "compensatory damages stemming from purely mental or emotional harms."). Therefore, Plaintiff's retaliation claim for emotional pain and suffering damages in Count V must be dismissed.

### G.    PLAINTIFF'S FAILURE TO INTERVENE CLAIMS ARE DUE TO BE DISMISSED.

Plaintiff alleges in Counts VIII and IX (Doc. 67 ¶¶ 360-366) that Defendants failed to intervene to prevent the violation of Plaintiff's constitutional rights. In order to be liable under a failure to intervene theory, a defendant official must have observed the violation and be in a position to intervene at the time of the violation; therefore, the violation must take place in the official's presence. *See Ensley v. Soper*, 142 F.3d 1402, 1407 (11th Cir. 1998). No such allegations exist in Plaintiff's First Amended Complaint. It merely alleges the Defendants failed to "address

the known security crisis at St. Clair," (Doc. 67 ¶ 361), or other general and vague allegations. Accordingly, Plaintiff's failure to intervene claims in Counts VIII and IX must be dismissed.

### H.     PLAINTIFF'S STATE LAW CLAIMS ARE DUE TO BE DISMISSED.

Counts X, XI, XII, and XIII of Plaintiff's Complaint (Doc. 67 ¶¶ 367-398) allege state law claims for intentional infliction of emotional distress and negligence.  Those alleged state law claims are barred by state agent immunity.

In *Ex parte Cranman,* 792 So.2d 392, 405 (Ala. 2000), the Supreme Court of Alabama enunciated the rule governing State-agent immunity as follows:

> A State agent shall be immune from civil liability in his or her personal capacity when the conduct made the basis of the claim against the agent is based upon the agent's
>
> (1)  formulating plans, policies, or designs; or
>
> (2)  exercising his or her judgment in the administration of a department or agency of government, including, but not limited to, examples such as:
>
>> (a)  making administrative adjudications;
>> (b)  allocating resources;
>> (c)  negotiating contracts;
>> (d)  hiring, firing, transferring, assigning, or supervising personnel; or
>
> (3) discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; or
>
> (4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers' arresting or attempting to arrest persons; or
>
> (5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.

> Notwithstanding anything to the contrary in the foregoing statement of the rule, a State agent shall not be immune from civil liability in his or her personal capacity
>
> (1) when the Constitution or laws of the United States, or the Constitution of this State, or laws, rules, or regulations of    this State enacted or promulgated for the purpose of regulating the activities of a governmental agency require otherwise, or
>
> (2) when the State agent acts willfully, maliciously, fraudulently, in bad faith, beyond his or her authority, or under a mistaken interpretation of the law.

*See also Ex parte Randall*, 971 So. 2d 652, 662 (Ala. 2007) ("Although *Cranman*  was a plurality decision, the restatement of law as it pertains to State-agent immunity set forth in *Cranman* was subsequently adopted by this Court's decisions in *Ex parte Rizk*, 791 So. 2d 911 (Ala. 2000) and *Ex parte Butts*, 775 So. 2d 173 (Ala. 2000).").[12]

As noted above, a state agent shall be immune from liability when the conduct on which the claim is based is the state agent's "formulating plans, policies, or designs"; and "hiring, firing, transferring, assigning, or supervising personnel." *Cranman*, 792 So. 2d at 405. Plaintiff's claims are based in part on allegations that the Defendants failed to properly monitor and supervise personnel. Because *Cranman* specifically established that state agents shall be immune from liability for claims based on their alleged conduct, the Court should dismiss these state law claims.

In a wrongful death case in which a two-month old infant was killed by a day care worker, after a social worker failed to detect that the day care worker was administering medication without parental consent or documentation, the Alabama Supreme Court held that the claims against the social worker were barred by state-agent immunity. *Randall*, 971 So. 2d at 664. Even though the Alabama Supreme Court conceded that the social worker was "either quite gullible or negligent or

---

[12]  Defendants are likewise entitled to immunity from Plaintiff's state law claims pursuant to ALA. CODE § 6-5-338.

perhaps even reckless," the Court explained that such conduct was consistent only with negligent or wanton behavior. *Id.* As the Court explained, "[t]his Court has previously held that poor judgment or wanton misconduct, an aggravated form of negligence, does not rise to the level of willfulness or maliciousness necessary to put the State agent beyond the immunity recognized in *Cranman*." *Id.* State-agent immunity "is not abrogated for negligent and wanton behavior; instead, immunity is withheld only upon a showing that the State agent acted willfully, maliciously, fraudulently, in bad faith, or beyond their authority." *Giambrone v. Douglas*, 874 So. 2d 1046, 1052 (Ala. 2003).

Plaintiff's allegations do not rise to the level of "willfulness or maliciousness necessary to put the [Defendants] beyond the immunity recognized in *Cranman*." *Randall*, 971 So. 2d at 664. Plaintiff's bare recitation of the exception for State agent immunity does not satisfy the requisite pleading requirements.

## I.     PLAINTIFF'S CONSPIRACY CLAIMS ARE DUE TO BE DISMISSED.

Plaintiff's civil conspiracy claims alleged in Counts VI and VII (Doc. 67 ¶¶ 339-359) must be dismissed. To maintain a civil conspiracy claim under 42 U.S.C. § 1983, the Plaintiff must show an underlying denial of constitutional rights. *GJR Invs., Inc. v. Cnty. of Escambia, Fla.*, 132 F.3d 1359, 1370 (11th Cir. 1998). The Plaintiff must also show that the Defendants reached an agreement to violate his rights. *Rowe v. City of Ft. Lauderdale*, 279 F.3d 1271, 1283 (11th Cir. 2002). As shown in the preceding sections, Plaintiff has not pled a cognizable denial of constitutional rights by these Defendants; nor has Plaintiff sufficiently made particularized allegations that any agreement existed to violate those rights.

> A plaintiff bringing a conspiracy claim must inform the defendants of the nature of the conspiracy alleged. It is not enough to aver in the complaint that a conspiracy existed. A "plaintiff claiming a conspiracy under § 1983 must make particularized allegations that

conspiracy exists." *See GJR Invs., Inc. v. Cnty.. of Escambia,* 132 F.3d 1359, 1370 (11th Cir. 1998). Vague and conclusory allegations that merely suggest a § 1983 conspiracy are insufficient to withstand a motion to dismiss. The claims must include enough factual allegations to 'raise a right to relief above the speculative level.' See *Twombly*, 550 U.S. at 554.

*Pittman v. State Farm Fire & Cas. Co.*, 662 F. App'x 873, 880 (11th Cir. 2016) (some internal citations omitted).

Even if Plaintiff had properly alleged a claim for civil conspiracy, the claim would nonetheless be barred by the intracorporate conspiracy doctrine. The doctrine operates to attribute the acts of an entity's agents to the entity itself, thereby negating the multiplicity of actors necessary for the formation of a conspiracy. *Grider v. City of Auburn*, 618 F.3d 1240, 1261 (11th Cir. 2010) (quoting *McAndrew v. Lockheed Martin Corp.*, 206 F.3d 1031, 1036 (11th Cir. 2000). An entity cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves. *Id.* Here, the only alleged conspirators are Alabama Department of Corrections employees with no outside actors alleged to be involved. As a result, the intracorporate conspiracy doctrine bars Plaintiff's conspiracy claim.

## CONCLUSION

Based upon the foregoing, Defendants Sanders, Malone, White, Graham, Gordy, Ragsdale, Estelle, McMillian, Boyd, Caldwell, Pickens, Bonner, McLemore, and Ary request that this Court enter an Order granting their Motion to Dismiss or, in the alternative, Motion to Strike Plaintiff's First Amended Complaint.

Respectfully submitted this the 19th day of April, 2021.

/s/ James N. Walter, Jr.
ROBERT F. NORTHCUTT (ASB-9358-T79R)
C. RICHARD HILL, JR. (ASB-0773-L72C)
JAMES N. WALTER, JR. (ASB-2722-R68J)
W. JACKSON BRITTON (ASB-8252-K46Y)

*Attorneys for Defendants Carl Sanders, Gary Malone, Kevin White, Carla Graham, Angelia Gordy, William Ragsdale, Neketris Estelle, Gerald McMillian, Christopher Boyd, Shannon Caldwell, Errol Pickens, Lisa Bonner, William McLemore, and Tanya Ary*

**Capell & Howard, P.C.**
150 S. Perry Street (36104)
PO Box 2069
Montgomery, AL  36102-2069
Phone (334) 241-8000
Email: bob.northcutt@chlaw.com
        rick.hill@chlaw.com
        jimmy.walter@chlaw.com
        jackson.britton@chlaw.com

<u>**CERTIFICATE OF SERVICE**</u>

       I hereby certify that on this 19th day of April, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record (and by U.S. Mail to non-CM/ECF participants) as indicated below:

Ruth M. Brown
Megan Pierce
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, IL  60607
ruth@loevy.com
megan@loevy.com

Anil A. Mujumdar
**DAGNEY JOHNSON LAW GROUP**
2170 Highland Avenue, Suite 250
Birmingham, AL  35205
anil@dagneylaw.com


William R. Lunsford
Stephen C. Rogers
La Keisha W. Butler
**MAYNARD COOPER & GALE, PC**
655 Gallatin Street
Huntsville, AL  35801
blunsford@maynardcooper.com
srogers@maynardcooper.com
lbutler@maynardcooper.com


                                   /s/ James N. Walter, Jr.
                                   Of Counsel