FILED
2022 Jul-14  PM 10:02
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| D.S., | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 2:20-cv-02012-RDP** |
| | ) | |
| v. | ) | |
| | ) | |
| JEFFERSON DUNN, et al., | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **Defendants.** | ) | |

### PLAINTIFF'S RESPONSE TO DEFENDANT VINCENT'S MOTION (Doc. 164) and COUNTER-MOTION FOR AMENDMENT OF THIS COURT'S ORDER ON MOTIONS TO DISMISS (Docs. 159 & 160)

Plaintiff D.S., by his attorneys with the law firms of Loevy & Loevy and the Dagney Johnson Law Group, hereby responds in opposition to Defendant Vincent's motion (Doc. No. 164) for an order altering, amending, or vacating the Opinion and Order on the Alabama Department of Corrections ("ADOC") Officials' Motion to Dismiss (Doc. Nos. 159, 160, the "Opinion"), and moves this Court to clarify that Plaintiff states claims in Count IV against Vincent, Gordy, and Ragsdale.

### INTRODUCTION

Defendant Vincent's motion (Doc. 164) arises from a misunderstanding of Plaintiff's claim in Count IV.  In Count IV, Plaintiff asserts an Eighth Amendment failure to protect claim against three Prison Rape Elimination Act ("PREA") officials, Christy Vincent, Angelia Gordy, and William Ragsdale, based on their deliberate indifference to St. Clair's prisoners through policies, practices, and inaction. As this Court recognized, Plaintiff has asserted one set of such policy and practice claims based on deliberate indifference to prisoners (including Plaintiff but not exclusively him), and another set of failure to protect claims based on deliberate indifference to

1

the individualized risks facing Plaintiff.  *See* Doc. 148, p. 4 (identifying which claims fall into which category); Doc. 159, p. 11-12 (same, but mischaracterizing Count IV)). Counts IV and V comprise the failure to protect claims against the three PREA defendants relating to their deliberate indifference.  Count IV alleges a claim based on deliberate indifference to prisoners, generally (including Plaintiff) against Vincent, Gordy, and Ragsdale. Doc. 134 ¶¶ 319-330. Count V alleges a claim for deliberate indifference to individualized risks facing Plaintiff, specifically, and it names only Gordy and Ragsdale as Defendants. Doc. 134 ¶¶ 331-339.

Plaintiff believes the confusion surrounding Vicent's status in the case may have arisen from the Court's inadvertent mislabeling of Count IV in the body of its decision, which appears to be the sole reason for the dismissal of that Count, as discussed in more detail below. Thus, Plaintiff respectfully asks that this Court amend and modify its entries at Doc. 159 and 160 to clarify that Plaintiff states claims in Count IV against Vincent, Gordy, and Ragsdale. Plaintiff further asks this Court to deny in full Vincent's motion seeking dismissal of the state law claims against her (Doc. 164).

## STATEMENT OF FACTS

### A.  Procedural history of Counts IV and V

In Count IV, Plaintiff alleged an extensive Eighth Amendment failure to protect claim against PREA Director Christy Vincent, St. Clair's PREA Compliance Manager Angelia Gordy, and St. Clair's Backup PREA Compliance Manager William Ragsdale, based on deliberate indifference exhibited through their policies, practices, and inaction in the face of risks of harm to St. Clair prisoners, generally.  Doc. 134 ¶¶ 319-330 (Count IV).

Separately, in Count V, Plaintiff alleged a failure to protect claim against Gordy and Ragsdale arising from deliberate indifference to the individualized risks facing Plaintiff. Doc. 134 ¶¶ 331-339. Plaintiff did *not* name Vincent as a defendant to this claim.

This Court summarized Plaintiff's allegations of notice of a general risk of violence to St. Clair's prisoners and deficient policies, practices, and inaction in response to the same, for supervisory defendants such as Vincent, Gordy, and Ragsdale, at pages 4-10 of its opinion at Doc. 159. In summary, as this Court described, Plaintiff has alleged that Defendants including Vincent, Gordy, and Ragsdale, "were all on notice of a security crisis at St. Clair" (Doc. 159, p. 4-5); "Plaintiff has also plausibly alleged [Vincent, Gordy, and Ragsdale's] knowledge of the substantial risk of harm to inmates at St. Clair" (Doc. 159, p. 6; *see id.* at 6-9); and Plaintiff has alleged that Defendants including Vincent, Gordy, and Ragsdale "failed to take meaningful corrective actions to reduce the substantial risk of serious harm" (Doc. 159, p. 8-9). The Court separately summarized Plaintiff's allegations that Gordy and Ragsdale were deliberately indifferent to specific individualized risks facing Plaintiff, in particular (Doc. 159, p. 2-3).

After reviewing Plaintiff's policy and practice claims based on deliberate indifference to the generalized risk facing prisoners at St. Clair, this Court denied Defendants' Motion to Dismiss as to these claims.  Doc. 159, p. 14-16.   As this Court summarized:

> Plaintiff has plausibly alleged that there is a history of exceptionally widespread prisoner on prisoner violence at St. Clair. (*Id.* at ¶¶ 106-149). He has also plausibly alleged that the prisoner population at St. Clair was heavily armed and that that the contraband search protocols at St. Clair were inadequate. (Id. at ¶ 209). And, Plaintiff has plausibly alleged that all Defendants had knowledge of the substantial risk of serious harm facing prisoners at St. Clair based on incident reports regarding the chronic, specifically-enumerated assaults, reports by the ADOC Investigations & Intelligence division, duty officer reports, disciplinary records, medical records, annual and monthly ADOC data reports, prisoner progress reports, direct observation, internal communications, and/or prisoner lawsuits. (Id. at ¶ 150). Moreover, Plaintiff has plausibly alleged that he had been specifically identified as a likely PREA victim prior upon his transfer to St. Clair, but he was placed in the general population and in a poorly supervised, dangerous housing block at St. Clair. (*Id.* at ¶¶ 229-

230). Finally, Plaintiff has similarly plausibly alleged that Defendants failed to take sufficient action to correct the knowingly dangerous situation or fulfill agreed-upon obligations to improve prison conditions related to the *Duke* settlement, establish a grievance system, properly investigate and discipline acts of violence. There are also plausible allegations that Defendants discouraged victims from reporting incidents of violence, and retaliated against prisoners who reported violence. (*Id.* at ¶¶ 233-254).  Doc. 159, p. 15.

However, this Court appears to have inadvertently omitted Plaintiff's Count IV from this analysis. Instead, this Court classified both Plaintiff's Count IV and Count V as being based on deliberate indifference to the individualized risk facing Plaintiff, when only Count V fell into that category. Doc. 159, p. 12. The Court's reasoning as to other claims against supervisors for policies, practices, and inaction in the face of a substantial risk of harm faced by St. Clair prisoners, however, squarely applies to the allegations in Count IV, including those against Vincent, Gordy, and Ragsdale. Doc. 159, p. 14-16.

## B.  Plaintiff's allegations in Count IV against Vincent, Gordy, and Ragsdale

As Plaintiff previously set forth in his response to the motion to dismiss (Doc. 148, p. 21-23), Plaintiff states failure to protect claims against PREA officials Vincent, Gordy, and Ragsdale in Count IV for their policies, practices, and omissions in the face of a substantial risk of harm to St. Clair prisoners generally. Doc. 134 ¶¶319-330. At the relevant times, Defendants Vincent, Gordy, and Ragsdale had the authority and duty to address the crisis of sexual violence at St. Clair. *Id.* ¶¶ 322-24, 22, 32-33, 35.

Defendant Vincent, in particular, was responsible for ensuring that ADOC adequately protected against sexual abuse and appropriately addressed incidents that did occur. *Id.* She was also responsible for assessing wardens' facility staffing plans, ensuring that they provided for adequate staffing levels to protect prisoners against sexual abuse and making adjustments if needed. *Id.* Plaintiff explains that Defendant Vincent acted in a supervisory capacity over St.

Clair employees at all times relevant to the Complaint. *Id.* ¶¶23. Further, Plaintiff alleges that constitutional injuries were proximately caused by a pattern and practice of misconduct at St. Clair, which occurred with the consent of the Defendant Vincent, who personally knew about, facilitated, approved, and/or condoned this pattern and practice of misconduct, or at least recklessly caused the alleged deprivation by their actions or by their deliberate indifference and failure to act. *Id.*

Prior to the assault on Plaintiff, Vincent, Gordy, and Ragsdale were aware of the staggeringly high levels of violence and sexual assault at St. Clair, particularly in the P/Q blocks. *Id.* ¶¶325, 249-270. They were aware of this crisis through, for example, the deluge of assaults and accompanying incident reports (*id.* ¶¶325, 150-80, 98-149, 209-214); the contents of the *Duke* litigation and initial settlement (*id.* ¶¶154-57, 162-64); a DOJ investigation (*id.* ¶¶159-161, 176-179); a letter from EJI (*id.* ¶¶ 167-72); and individual lawsuits such as three illustrative lawsuits arising from earlier sexual assaults at St. Clair brought against Gordy and other defendants (*id.* ¶174). They were also aware of the dangerous conditions fueling the horrific violence at St. Clair. *Id.* ¶¶325.

Nonetheless, these Defendants took no action to stem the tide of sexual violence and instead promoted policies and customs that facilitated sexual violence and caused Plaintiff's injuries. *Id.* ¶¶326-29. As but a few examples, they housed PREA victims, who had been subject to victimization while in ADOC custody and were at risk for additional assaults, alongside their known enemies and predatory and violent prisoners, directly contrary to PREA's mandates (*id.* ¶¶ 326(b), 327(b), 224-31, 262-63, 117b, 113b, and 124); failed to take steps to prevent, detect, and adequately respond to sexual abuse, including the failure to protect reporting victims from retaliation, emboldening perpetrators and creating a culture of sexual assault (*id.* ¶¶ 326(a), 327(a), 249-271, 233-39, 108, 113b, 117-122, 124, 126, 128d, 130a, 132-137, 139, 144a, 149); and failed

to ensure that perpetrators were disciplined for and segregated after in-custody sexual violence, further endangering likely victims. *Id.* ¶¶326(c), 327(c), 232-48. These Defendants also knew that their subordinates engaged in the same practices (*id.* ¶¶326, 328), but failed to correct their subordinates' conduct even though they were tasked with ensuring St. Clair's compliance to PREA's mandates, further perpetuating the conditions that caused Plaintiff's injuries. *Id.*

In her motion to dismiss, Defendant Vincent did not discuss the allegations against her in Count IV, nor point to any infirmity therein, forfeiting any argument for dismissal. Doc. 142, p. 9-13 (discussing only other ADOC officials and wardens). Regardless, Plaintiff's allegations against her suffice under settled authority. *See* Doc. 148 at 7-20; *Dickinson v. Cochran*, 833 Fed. App'x 268, 272-75 (11th Cir. 2020); *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1029 (11th Cir. 2001); *Valdes v. Crosby*, 450 F.3d 1231, 1244 (11th Cir. 2006).

For their part, Defendants Gordy and Ragsdale sought dismissal of Count IV on the basis that, as they contend, Plaintiff blames them for "broad criticisms of St. Clair's operations as a whole." Doc. 140, p. 7. Not so; Plaintiff alleges that these two St. Clair PREA officials were specifically responsible for implementing and enforcing the separation of likely victims from likely perpetrators of sexual violence at St. Clair, as required by PREA, and for ensuring that incidents of sexual violence were appropriately addressed and prisoners were protected from further victimization and retaliation (*id.* ¶¶324), but promoted and implemented policies and practices directly to the contrary, establishing their liability. *See Ogletree v. Colbert Cty., Alabama*, 2021 WL 4477630, at *24-25 (N.D. Ala. Sept. 30, 2021). They also failed to ensure that St. Clair's line staff followed PREA's requirements, resulting in a culture of sexual violence. Doc. 134 ¶¶326-328. Gordy and Ragsdale asked this Court to require Plaintiff to plead more facts, yet Plaintiff sufficiently details Gordy and Ragsdale's obligations and responsibilities, the dangerous

conditions of unchecked sexual violence that Gordy and Ragsdale failed to address (*id.* ¶¶326-328, 249-71), and provides numerous facts in support, including from prior litigation over sexual violence at St. Clair (*id.* ¶¶154-55, 165, 174-75, 177-78). Plaintiff also specifies 23 additional illustrative reported sexual assaults, many of which took place in the unsafe P/Q units in which Gordy and Ragsdale housed documented PREA victims such as Plaintiff. (*id.* ¶¶108, 113(b), 117(a), 118, 119(b), 120, 121(a), 121(c), 122, 124, 126, 128(d), 130(a), 131, 132(b), 133, 134(b), 136, 137, 139, 144(a)); illustrative instances in which vulnerable prisoners were housed in general population or alongside enemies, where they were again assaulted (*id.* ¶¶ 137, 126, 113(b), 141, 117(b), 149); and illustrative instances in which predatory prisoners were allowed to commit repeated acts of violence (*id.* ¶124, 126, 128(a)). Plaintiff also sufficiently pleads that Gordy and Ragsdale's deliberate indifference caused Plaintiff's injuries. Pursuant to Gordy and Ragsdale's problematic practices at St. Clair, Plaintiff was housed in general population, in the most violent and unsupervised "hot bay" P/Q unit, alongside enemies and likely PREA perpetrators, who were emboldened by the lax policies disciplining sexual assault – even though he had been classified as a PREA victim who needed to be housed separately from potential predators. *Id.* ¶¶226-230, 58, 62. Thus, as the Court found as to Plaintiff's other policy and practice claims (Doc. 159, p. 14-16), Count IV states a claim.

## ARGUMENT

I.     **Plaintiff's failure to protect claim against Defendant Vincent is based on the generalized risk to prisoners at St. Clair and must be upheld pursuant to the Court's reasoning.**

Defendant Vincent's motion contends that, if Plaintiff did not adequately state his failure to protect claim, then Plaintiff also did not plausibly state his intentional infliction of emotion distress and negligence claims.  Doc. 164, p. 2-4.  This argument rests on an incorrect premise:

that Plaintiff's failure to protect claim against Vincent is based on deliberate indifference to Plaintiff's *individualized* risks, and thus was subject to dismissal. Yet Plaintiff's failure to protect claim against Vincent was alleged in Count IV, and alleges that Vincent, along with Gordy and Ragsdale, perpetrated policies, practices, and omissions as PREA officials with deliberate indifference to the risks of harm faced by St. Clair's prisoners. Doc. 134 ¶¶ 319-330.

After reviewing Plaintiff's policy and practice claims based on deliberate indifference to the generalized risk to prisoners at St. Clair, this Court properly denied Defendants' Motion to Dismiss as to these claims.  Doc. 159, p. 14-16.  At this Court recognized:

> Plaintiff has plausibly alleged that there is a history of exceptionally widespread prisoner on prisoner violence at St. Clair. (*Id.* at ¶¶ 106-149). He has also plausibly alleged that the prisoner population at St. Clair was heavily armed and that that the contraband search protocols at St. Clair were inadequate. (Id. at ¶ 209). And, Plaintiff has plausibly alleged that all Defendants had knowledge of the substantial risk of serious harm facing prisoners at St. Clair based on incident reports regarding the chronic, specifically-enumerated assaults, reports by the ADOC Investigations & Intelligence division, duty officer reports, disciplinary records, medical records, annual and monthly ADOC data reports, prisoner progress reports, direct observation, internal communications, and/or prisoner lawsuits. (Id. at ¶ 150). Moreover, Plaintiff has plausibly alleged that he had been specifically identified as a likely PREA victim prior upon his transfer to St. Clair, but he was placed in the general population and in a poorly supervised, dangerous housing block at St. Clair. (*Id.* at ¶¶ 229-230). Finally, Plaintiff has similarly plausibly alleged that Defendants failed to take sufficient action to correct the knowingly dangerous situation or fulfill agreed-upon obligations to improve prison conditions related to the *Duke* settlement, establish a grievance system, properly investigate and discipline acts of violence. There are also plausible allegations that Defendants discouraged victims from reporting incidents of violence, and retaliated against prisoners who reported violence. (*Id.* at ¶¶ 233-254).  Doc. 159, p. 15.

For these reasons articulated by the Court, Plaintiff's failure to protect claim against Defendants Vincent, Gordy, and Ragsdale based on their deliberate indifference to the generalized risk to prisoners at St. Clair (Count IV) should have been upheld against challenge, and its dismissal appears to be inadvertent.  Plaintiff thus respectfully asks this Court to clarify that it

intended to uphold Count IV against Vincent, Gordy, and Ragsdale, and deny Vincent dismissal of any claims as sought in her motion (Doc. 164).

## II.   This Court correctly declined to dismiss Plaintiff's state law claims against Vincent

Defendant Vincent challenges the Court's Opinion that Plaintiff has sufficiently alleged an intentional infliction of emotional distress ("IIED") or negligence claim against her.  Doc. 164, p. 3. Her sole basis in so arguing is that, according to Vincent, Plaintiff has not stated a federal failure to protect claim against her.  Should this Court amend its order to clarify that Plaintiff has alleged a failure to protect claim in Count IV against Vincent, her arguments about the state law claims become moot.  In any case, dismissal of the state law claims is unwarranted.

### i.   IIED claim

To state an intentional infliction of emotional distress claim, "the plaintiff must demonstrate: '(1) that the defendants either intended to inflict emotional distress, or knew or should have known that emotional distress was likely to result from their conduct; (2) that the defendants' conduct was extreme and outrageous; and (3) that the defendants' conduct caused emotional distress so severe that no reasonable person could be expected to endure it.'" *Drew v. Quest Diagnostics*, 992 F. Supp. 2d 1177, 1185-86 (N.D. Ala. 2014) (quoting *Callens v. Jefferson County Nursing Home*, 769 So.2d 273, 281 (Ala. 2000)).

As this Court has recognized, Plaintiff "has plausibly stated his intentional infliction of emotional distress claims." Doc. 159, p. 22.  Plaintiff's robust allegations explain that, prior to the assault on Plaintiff, high levels of violence, sexual assault, and terror reigned within St. Clair prison, particularly in the hot bay P/Q blocks. Doc. ¶¶325, 249-270.  Defendant Vincent was aware of this crisis at St. Clair, where reported prisoner-on-prisoner assaults had increased sevenfold between 2010 and 2018, and "far exceeded typical levels of violence at comparable facilities."

9

Doc. 134 ¶¶98-103, 250-251.  Plaintiff details well over 100 assaults in the two years leading to his assault at St. Clair, including sexual assaults specifically in the P/Q blocks where Plaintiff was horrifically assaulted. *Id.* ¶¶105-149, 174.  Vincent was also aware through class action and individual lawsuits  addressing the assaults at St. Clair, and their settlements, including the *Duke* litigation. *Id.*  ¶¶154-57, 162-64, 174-75.  Vincent, Gordy, and Ragsdale were also aware of these assaults and the dangerous conditions at St. Clair through the DOJ investigation (*id.* ¶¶159-161, 176-179) and a letter from EJI (*id.* ¶¶ 167-72).

Vincent allowed the dangerous conditions to persist even though she knew that assaults happened on a near-daily basis at St. Clair (*id.* ¶¶99-104, 208-211, 106-149), particularly in the P/Q blocks (*e.g.*, *id.* ¶¶181-205, 106-149), heightening the need for correctional officers to monitor and be prepared to intervene during assaults. Instead, she allowed prisoners who had already been victims of sexual assault to be housed alongside their known enemies and/or predatory and violent prisoners, directly contrary to PREA's mandates (*id.* ¶¶ 326(b), 327(b), 224-31, 262-63, 117b, 113b, and 124); promoted and implemented policies that failed to inadequately prevent, detect, and respond to sexual abuse, including the failure to protect reporting victims from retaliation, emboldening perpetrators and creating a culture of sexual assault (*id.* ¶¶ 326(a), 327(a), 249-271, 233-39, 108, 113b, 117-122, 124, 126, 128d, 130a, 132-137, 139, 144a, 149); and failed to ensure that perpetrators were disciplined for and segregated after in-custody sexual violence, further endangering likely victims. *Id.* ¶¶326(c), 327(c), 232-48. Vincent also knew that her subordinates engaged in the same practices (*id.* ¶¶326, 328), but failed to correct her subordinates' conduct even though she was responsible for ensuring St. Clair's compliance to PREA's mandates, further perpetuating the conditions that caused Plaintiff's injuries. *Id.*

Thus, Plaintiff has pleaded in detail the requisite extreme and outrageous conduct, including that Vincent was explicitly and repeatedly warned of the violent conditions caused by her inaction, policies and practices; knew the foreseeable consequences of her conduct to prisoners such as Plaintiff; and yet chose not to alter her behavior, even as prisoners continued to be brutally assaulted, stabbed, raped, and/or killed by the dozens at St. Clair. *Id.* ¶¶406-15, 98-180. The tort of IIED is particularly applicable to conduct that, as here, results in sexual assault, and to abuses of authority by government actors sworn to protect those in their custody. *Thompson v. City of Birmingham*, 5 F. Supp. 3d 1304, 1329 (N.D. Ala. 2014); *see also Hill v. Cundiff*, 797 F.3d 948, 984 (11th Cir. 2015) (tortfeasors are responsible for the foreseeable emotional distress that results from their conduct). For these reasons, the Court has already noted that Plaintiff "has plausibly stated his intentional infliction of emotional distress claims." Doc. 159, p. 22.

ii.    Negligence claim

Similarly, this Court has acknowledged that Plaintiff has "also stated a plausible negligence claim." *Id.* Under a negligence claim, "[p]rison officials have a duty to exercise ordinary and reasonable care for the protection of persons in their custody." *Patton v. Thompson*, 958 So. 2d 303, 310 (Ala. 2006). They "must exercise reasonable care for the protection of the inmate's life and health under the circumstances of the particular case." *Id.* Here, the Court has reviewed the plethora of facts Plaintiff alleges and properly recognized that "Plaintiff has alleged that Defendants [including Vincent] had such a duty, that they violated it, and that he suffered damages." Doc. 159, p. 22.

**III.    Dismissal of the state law claims against Vincent while the rest of this litigation proceeds would constitute an abuse of discretion.**

Defendant Vincent also asserts that the Court retains discretion to dismiss Plaintiff's state law claims for adjudication in state court, in light of its decision on Plaintiff's federal claims.

Doc. 164, p. 4. Yet Defendants offer no reason why Plaintiff should have to proceed with parallel state court litigation against Vincent for claims that largely overlap with those that will be litigated in this forum. The Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367, and it would be highly inefficient and burdensome to Plaintiff and the state court for Plaintiff to have to proceed in two separate actions, simultaneously.

Whenever a federal court has supplemental jurisdiction under Section 1367(a), that jurisdiction should be exercised unless Section 1367(b) or (c) applies. *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 743 (11th Cir. 2006). The discretion afforded federal courts in these cases has been codified by Section 1367(c). *Id.* That provision clarifies that a federal court may decline to hear a state law claim otherwise within its supplemental jurisdiction only under four limited circumstances: (1) the state law claim raises a novel or complex issue of state law, (2) the state law claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. 28 U.S.C. § 1367(c).

Aside from citing the Court's discretion to dismiss the state law claims, Defendant Vincent does not provide any reasons for declining supplemental jurisdiction nor explain why the state law claims in this case are too novel or complex for the federal court. On the contrary, state tort claims are generally *not* considered novel or complex. *Parker*, 468 F.3d at 743. Vincent also does not cite any authority for why the state law claims substantially predominates over the federal claim. "A federal court will find substantial predominance when it appears that a state claim constitutes the real body of a case, to which the federal claim is only an appendage." *Id*. at 744. In the instant case, there is no argument that the state law claims are "only an appendage" and the district court

has not dismissed all claims over which it has original jurisdiction. Indeed, dismissal of the state law claims against Vincent would require Plaintiff to litigate overlapping claims in two different forums, simultaneously, wasting the resources of both Plaintiff and the courts. Because this Court has the power to exercise supplemental jurisdiction over Plaintiff's state law claims against Vincent, and because none of the factors enumerated in 28 U.S.C. 1367(c) are satisfied, failure to exercise jurisdiction over the state law claims would be an abuse of discretion. *Parker*, 468 F.3d at 747.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court amend its opinion at Docs. 159 & 160 to clarify that Plaintiff states federal failure to protect claims in Count IV against Defendants Vincent, Gordy, and Ragsdale. Plaintiff further asks this Court to deny Defendant Vincent's motion seeking dismissal from the case.

RESPECTFULLY SUBMITTED,

**D.S.**

BY**:** /s/ Quinn K. Rallins

BY**:** /s/ Anil Mujumdar

*Local Counsel*

*Ruth Z. Brown (pro hac vice)
Megan Pierce (pro hac vice)
Quinn K. Rallins (pro hac vice)
Attorneys for Plaintiff
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, IL 60607
Telephone: 312-243-5900
Fax: 312-243-5902
Email: ruth@loevy.com, megan@loevy.com,
rallins@loevy.com
*Counsel of Record

13

Anil A. Mujumdar (ASB-2004-L65M)
Dagney Johnson Law Group
2170 Highland Avenue, Suite 250
Birmingham, AL 35205
T: 205.590.6986
F: 205.809.7899
E: anil@dagneylaw.com

## CERTIFICATE OF SERVICE

I, Quinn K. Rallins hereby certify that a copy of the foregoing has been served upon all

parties in this matter, including without limitation the following, by the Court's CM/ECF system

or by U.S. Mail on this 14th day of July 11, 2022.


*Ruth Z. Brown (pro hav vice)
Megan Pierce (pro hac vice)
Quinn Rallins (pro hac vice)
LOEVY & LOEVY
311 N. Aberdeen, 3rd Floor
Chicago, IL 60607
T: 312-243-5900
F: 312-243-5902
E: ruth@loevy.com, megan@loevy.com,
rallins@loevy.com
*Counsel of Record

Anil A. Mujumdar (ASB-2004-L65M)
DAGNEY JOHNSON LAW GROUP
2170 Highland Avenue, Suite 250
Birmingham, AL 35205
T: 205.590.6986
F: 205.809.7899
E: anil@dagneylaw.com

*Attorneys for Plaintiff*

Robert F. Northcutt
C. Richard Hill, Jr.
James N. Walter, Jr.
CAPELL & HOWARD, PC
P.O. Box 2029
Montgomery, AL 36102
T: (334) 241-8000
F: (334) 323-8888
bob.northcutt@chlaw.com
rick.hill@chlaw.com
jimmy.walter@chlaw.com

*Attorneys for Carl Sanders, Gary Malone,
Kevin White, Carla Graham, Angelia Gordy,
Williams Ragdale, Neketris Estelle,
Gerald McMillan, Christopher Boyd,
Lisa Bonner, and Tanya Ary*

William R. Lunsford
Matthew B. Reeves
M. Landon Whatley
MAYNARD, COOPER & GALE
655 Gallatin Street, S.W.
Huntsville, AL 35801
T: (256) 551-0171
F: (256) 512-0119
blunsford@maynardcooper.com
mreeves@maynardcooper.com
lwhatley@maynardcooper.com


/s/ Quinn K. Rallins
*One of the Attorneys for Plaintiff*